UNITED STATES of America, Appellee,

v.

**Philip PRESCOTT,**
**Defendant–Appellant.**

**No. 64, Docket 90–1156.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 30, 1990.

Decided Nov. 28, 1990.

Michael Shapiro, New York City (Slotnick & Baker, New York City, of counsel), for appellant.

Denis M. King, Asst. U.S. Atty., D. Connecticut, Bridgeport, Conn. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., New Haven, Conn., of counsel), for appellee.

Before FEINBERG and CARDAMONE, Circuit Judges, and RE, Chief Judge.*

CARDAMONE, Circuit Judge:

This appeal by a defendant alleging violation of his due process rights implicates the scope of discretion trial courts possess in determining the facts that affect a sentence. Once the time comes to set a defendant's sentence, a district court's range of discretion is confined by the Sentencing Guidelines; yet, it need not tread a narrow path to arrive at that day, for the course it follows in resolving disputed facts at sentencing remains within the district court's broad discretion.

Philip Prescott appeals from a February 16, 1990 judgment entered in the United

* Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation.

States District Court for the District of Connecticut (Burns, Ch.J.) sentencing him to 20 years imprisonment, 3 years supervised release, and fining him $25,000 upon his plea of guilty to a one-count indictment charging him with conspiracy to possess with the intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988). Although the underlying conviction is not challenged, appellant raises several arguments regarding various aspects of his sentencing that he believes were in error. Because none of these arguments are persuasive, we affirm.

## BACKGROUND

### A. *Facts*

A joint investigation by the U.S. Drug Enforcement Administration, the Federal Bureau of Investigation, the Statewide Narcotics Task Force of the Connecticut State Police, and the Police Department of the City of Stamford, Connecticut produced evidence that appellant was involved in the distribution of cocaine. The evidence included controlled purchases by undercover agents arranged by Prescott, consensually recorded conversations that involved him, and drugs and paraphernalia attributable to him found by police while executing search warrants.

On October 6, 1989 appellant waived his right to an indictment and pled guilty to the one-count charge. Two of the controlled purchases were the subject of a stipulation, under which it was agreed that appellant's relevant conduct would be considered by the district court at sentencing that was scheduled two months later on December 6, 1989.

### B. *Continuances*

In response to requests and motions the district court postponed the date of sentencing several times, ultimately moving it from December 6 to February 16, 1990. After a request by the U.S. Marshal, the district court on December 1 ordered Prescott to undergo a psychiatric examination and directed a hearing be held on January 2, 1990 to determine whether he suffered from a "mental disease or defect" requir-ing commitment for treatment rather than incarceration. *See* 18 U.S.C. § 4244(a) (1988). Sentencing was put over until completion of the hearing. The district judge later rescheduled the mental status hearing to January 30, 1990 in response to a request from the Warden of the Federal Correctional Institution at Butner, North Carolina where Prescott was being examined.

Appellant filed two successful motions for continuances. The first, filed on November 30, 1989 and aided by the Warden's December 27 request, resulted in the January 30 rescheduled date. After Prescott changed lawyers on January 5, 1990 a second continuance was applied for on January 12 so that new counsel could familiarize themselves with the matter and obtain an independent psychiatric evaluation. The mental status hearing and sentencing were thereupon adjourned by Chief Judge Burns from January 30 to February 16, 1990.

When on January 12 the district court granted Prescott's application to make him available for an evaluation by Dr. Alden Whitney to be conducted on February 11—five days before sentencing—the court stated that further motions to postpone the February 16 hearing would not be entertained. Prescott nonetheless filed on February 9 two more motions for adjournments: one so that his new counsel could review the government's sentencing memorandum received on February 7; the other to give Dr. Whitney time to prepare his report and for counsel to review it prior to sentence. Both motions were denied. Prescott made a final unsuccessful oral request for a continuance for the purpose of obtaining more evidence on February 16 at the mental status and sentencing hearing, after the district court had ruled that the evidence before it did not warrant a downward departure under United States Sentencing Guidelines § 5K2.13 (Guidelines).

### C. *Prescott's Mental Status*

At the mental status hearing the government submitted the Forensic Evaluation of Drs. Edward Landis and Gregory Caesar—

both of Butner Correctional Institution—who prepared their report in response to the court's December 1, 1989 order. The evaluation concluded Prescott was not suffering from a mental disease or defect. The defense presented the report and testimony of Dr. Whitney, who diagnosed Prescott as suffering from a severe borderline personality disorder which he averred was a mental disease or defect, but who testified at the hearing that such disorder is not viewed as a mental disease or defect within the mental health community. The trial court found Prescott was not suffering from a mental disease or defect that would qualify him for commitment to a suitable facility, rather than imprisonment, under 18 U.S.C. § 4244(d).

### D. *Prescott's Sentence*

On completion of the mental status hearing, the district court held a sentencing hearing, in part to determine the reliability and accuracy of the information contained in the presentence report. Prescott objected to the report's reliance on hearsay evidence in arriving at a figure of 150 kilograms of cocaine attributed to him. This quantity was based on an estimate that he was involved in the sale or distribution of one kilogram of cocaine per week over a period of three years.

The presentence report based its conclusion on information obtained from several sources. The report's conclusion that Prescott distributed approximately a kilogram of cocaine per week for 150 weeks was supported by Prescott's admission of those facts and was corroborated by an informant. This estimate of quantity was further buttressed by information obtained from seven individuals, three of whom testified before a grand jury. The information in the presentence report obtained from defendant's former business partner in an auto repair business stated that in their best week they moved ten kilograms of cocaine. Another of defendant's associates told an undercover agent that Prescott sold two and one-half to three kilograms of cocaine per week. His girlfriend—later married to, then separated from defendant—told the investigators that 16 named individuals worked for appellant in a business selling four to five thousand dollars worth of cocaine a day. Perhaps most telling was the fact that in the two and one-half months that Prescott owned a cellular telephone from August 2 to October 19, 1989, he ran up an unpaid telephone bill of $5,139.38. The telephone company records revealed a total of 12,611 incoming and outgoing calls in 79 days or nearly 160 calls a day on average.

The district court approximated the quantity of cocaine involved in the offense, *see* Commentary to Guidelines § 2D1.4, and found the information in the pre-sentence report credible, relying on the fact that several people gave substantially the same information regarding the nature and scope of Prescott's drug activity.

Appellant's original base offense level of 36 under § 2D1.4 of the Guidelines—based on the distribution of 150 kilograms of cocaine—was increased by four levels because Prescott was the leader of the drug conspiracy, and was reduced by two points for his acceptance of responsibility under Guidelines § 3E1.1(a), yielding a final base offense level of 38. Prescott had a previous conviction for assault on a police officer for which he received a two-year suspended sentence and probation. To this one point for a prior sentence, two points were added because the instant offense was committed while he was on probation. *See* Guidelines § 4A1.1(e). This placed Prescott in Criminal History Category II with a sentencing range of 262 to 327 months. The district court declined to downwardly depart under § 5K2.13, stating it could not find that Prescott's personality disorder contributed to the offense.

### DISCUSSION

Prescott raises four issues on appeal with respect to his sentence contending: first, the procedures followed in determining his base offense level violated due process; second, the refusal to depart downwardly from the Guidelines under § 5K2.13 was error; third, the failure to sentence him under 18 U.S.C. § 4244(d) was clearly

erroneous; and, fourth, the denial of his three motions for continuances was an abuse of discretion. We discuss each of these contentions in turn.

## I

The challenge to the procedure by which the district court determined appellant should be sentenced for a base offense level of 38—the level assigned by the Guidelines to a conviction for distribution of 150 kilograms of cocaine and conspiracy to possess cocaine with the intent to distribute—is premised on the presentence report's allegedly erroneous reliance on hearsay evidence. Prescott urges that we require the sentencing court to hold a full-blown evidentiary hearing when the presentence report relies on hearsay testimony in order to fix a base offense level. He contends that because the resolution of disputed sentencing factors may dramatically increase the sentence imposed, the procedures surrounding sentencing must take on increased formality in response to the gravity of the potential sentence. He also says the proof in the report did not establish by a preponderance of the evidence that he distributed 150 kilograms of cocaine over a three-year period. Resolution of this issue implicates what process is due at sentencing to a defendant who has admitted guilt.

### A. *Due Process at Sentencing*

We begin by noting that "a defendant has a due process right to question the procedure leading to the imposition of his sentence." *United States v. Pugliese,* 805 F.2d 1117, 1122 (2d Cir.1986) (citing *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977)), *cert. denied,* 489 U.S. 1067, 109 S.Ct. 1344, 103 L.Ed.2d 813 (1989). Although the sentencing court has discretion to consider a wide range of information in arriving at an appropriate sentence, *United States v. Tucker,* 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972), a defendant may not be sentenced on the basis of "materially untrue" statements, or on "misinformation or misreading of court records." *Townsend*

*v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

To make defendant's right meaningful, a sentencing court must assure itself that the information upon which it relies when fixing sentence is reliable and accurate. *See Pugliese,* 805 F.2d at 1124. Prior to the passage of the Federal Sentencing Guidelines, when a defendant challenged the accuracy of hearsay evidence contained in a presentence report, the government was required to introduce corroborating proof that was subject to being rebutted. *Id.* at 1123. The form or style of the hearing held to determine those matters in the presentence report that were contested rested in the discretion of the district court. It might consist of opposing affidavits, letters or other writings, argument and comment directed to the court, cross-examination of witnesses, or a full-blown evidentiary hearing. *See id.; United States v. Lee,* 818 F.2d 1052, 1056 (2d Cir.), *cert. denied,* 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987). A defendant had no absolute right to present witnesses or to receive a full-blown evidentiary hearing. *See Pugliese,* 805 F.2d at 1123.

This was the state of Circuit law prior to the advent of the Guidelines. It cannot be doubted that the broad range of discretion vested in the district courts to fix sentences has been curtailed since the advent of the Guidelines. This case of a heavy sentence imposed on a relatively young (age 23) offender is illustrative. Although Congress urged the Sentencing Commission to consider "all the relevant factors" at sentencing, *see* S.Rep. No. 98, 98th Cong., 2d Sess. 52, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235, a defendant's age under the Guidelines is ordinarily not a relevant factor. *See* Guidelines § 5H1.1. The sentencing court's comments clearly reflect its unease with its lack of flexibility under the circumstances presented. Nevertheless, the Guidelines and enabling legislation plainly evince Congress' effort to narrow the *range* of district court discretion in fixing a sentence.

Although the Guidelines reduce a sentencing court's discretion in setting the sen-

tence, this decreased discretion does not limit the *procedure* a district court may choose to follow in determining the facts affecting sentence. The Guidelines state in § 6A1.3(a) in relevant part, "[w]hen any factor important to the sentencing determination is reasonably in dispute, the parties shall be given an adequate opportunity to present information to the court regarding that factor." The Commentary that follows specifies that the "sentencing court must determine the appropriate procedure in light of the nature of the dispute, its relevance to the sentencing determination, and applicable case law." Guidelines § 6A1.3, Commentary at 6.2.

It further suggests that written statements by counsel or affidavits of witnesses often may be sufficient but that "more formality"—including in some cases an evidentiary hearing—may be "unavoidable if the sentencing process is to be accurate and fair." *Id.* Consequently, we conclude the Sentencing Commission decided not to adopt any particular procedure, nor did it suggest why the due process calculus should be changed simply because Congress has reduced the discretion formerly granted district courts in imposing sentences. *See United States v. Guerra,* 888 F.2d 247, 250–51 (2d Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1833, 108 L.Ed.2d 961 (1990). In light of the Sentencing Commission's stance, we see no reason to alter the settled law of this Circuit regarding the procedure by which the district court resolves disputed sentencing factors to arrive at the applicable range.

▮ The same policy considerations set forth in *Lee* and *Guerra* to determine what burden of proof is required to be shouldered by the government, and how formal the sentencing hearing must be, apply today as they did before the Guidelines. "These concerns include the long history of judicial discretion in sentencing, the strong interest in judicial economy, and the fact that already over-burdened trial courts would be greatly disserved" by mandating time-consuming hearings. *Lee,* 818 F.2d at 1057. We hold therefore that the burden of proof at a sentencing hearing to determine a base offense level is by a preponderance of the evidence, *see United States v. Shoulberg,* 895 F.2d 882, 886 (2d Cir.1990); *Lee,* 818 F.2d at 1057; *Guerra,* 888 F.2d at 251. And, we reiterate, the procedure followed in resolving disputed factors at sentencing rests in the district court's sound discretion. *See Pugliese,* 805 F.2d at 1123. Hence, a sentencing court is under no duty to conduct a full-blown evidentiary hearing simply because contested hearsay testimony is contained in a presentence report.

### B. *Due Process Applied in This Case*

▮ We turn now to consider first whether the procedures used by the district court satisfy the requirements of due process. Analysis begins by balancing (1) the nature of the individual interest affected, (2) the risk of an erroneous deprivation of that interest through the procedure used, (3) the probable value, if any, of additional safeguards, and (4) the government's interest, including fiscal and administrative burdens. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *United States v. Romano,* 825 F.2d 725, 729 (2d Cir.1987).

As is generally the case when *Mathews* is applied in the criminal context, Prescott's great interest in his future liberty balances the government's interest in halting the distribution of large quantities of cocaine by punishing those involved in drug trafficking. Thus, the test quickly collapses into whether the procedure used was sufficient to guard against an erroneous deprivation of his liberty interest or whether more stringent procedures are feasible and necessary. We believe the procedures used were adequate to protect against the risk of erroneous results. Appellant was able to dispute the evidence in the presentence report as well as the government's proffer to corroborate it. His attorneys submitted objections to the report and a memorandum in support of those objections, and directed argument and comment to the district court. Although the government had a witness present at the hearing, the defense chose not to call him or any other witnesses. In short, Prescott had an

effective opportunity to rebut allegations likely to affect his sentence.

■ We turn next to analyze appellant's contention that the government did not prove by a preponderance of the evidence that he distributed 150 kilograms of cocaine, asserting that the hearsay testimony relied on by the government was inherently unreliable because cross-examination of the witnesses was unavailable. The presentence report relied on the statements of several "cooperating individuals" as well as Prescott's own statements in fixing this amount. When defendant contested the quantity of this proof, the government presented a sentencing memorandum that tracked the presentence report with cross-references to an appendix containing corroborative reports, transcripts of consensually-monitored conversations involving Prescott, witness statements, grand jury testimony, and exhibits.

The testimony of the "cooperating individuals" supports the finding that Prescott distributed at least 150 kilograms of cocaine. One individual testified before a grand jury that he made one kilogram purchases from Prescott on five occasions. Prescott's mobile phone records corroborate that testimony, revealing a sequence of calls to this individual during the relevant time period. Another person testified before a grand jury that he and Prescott broke up and packaged kilograms of cocaine for sale on at least three occasions and Prescott told him he sold three kilograms per week. Similar statements were made by two other individuals, appellant's former business partner and appellant's girlfriend, who later became his wife.

Another person, while working for Prescott—and also providing information to an officer of the Darien Police Department—told that officer he had personally seen Prescott in possession of about 20 kilograms of cocaine. Several other individuals stated Prescott dealt in large quantities of cocaine. The testimony of those "cooperating individuals" is corroborated by telephone and hotel records, and statements made by Prescott. The cooperating individuals made their statements independently

of one another; in three cases the statements were made before a grand jury, in others the statements were made at the time of the person's arrest. Prescott himself stated that he engaged in this activity for three years. Based on this information, the district court accepted the conclusion of the presentence report that Prescott was involved in the sale or distribution of one kilogram of cocaine per week over 150 weeks.

The accounts relied on by the district court were numerous and independent, and they described with a high degree of inter-correlation the same kind of behavior by Prescott. Thus, this hearsay testimony had a sufficient indicia of reliability for the district court to conclude it was accurate. Guidelines § 6A1.3(a); *see United States v. Carmona*, 873 F.2d 569, 575 (2d Cir.1989) (all "independent accounts meshed and plainly gave [the district court] an ample basis for ruling that the hearsay testimony was reliable"). As a consequence, the district court properly found the evidence proffered by the government proved by a preponderance of the evidence that Prescott distributed 150 kilograms of cocaine over a three-year period. The procedure used in arriving at Prescott's sentence did not offend his right to due process.

## II

■ The next question raised is whether the refusal to depart downwardly from the guidelines range presents a cognizable appellate claim. It is now well established that a district court's refusal to depart downwardly is not appealable. *See United States v. Soliman*, 889 F.2d 441, 443 (2d Cir.1989); *United States v. Colon*, 884 F.2d 1550, 1552 (2d Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989). Prescott concedes this, but argues that a recognized exception should be applied in his case. It is true that an exception exists where the refusal to depart downwardly was based on the district court's mistaken view that it did not have the discretion to do so. *See United States v. Sharpsteen*, 913 F.2d 59, 63 (2d Cir.1990); *United States v. Adeniyi*, 912 F.2d 615, 618 (2d

Cir.1990); *United States v. Bayerle*, 898 F.2d 28, 31 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 65, 112 L.Ed.2d 39; *United States v. Fossett*, 881 F.2d 976, 979 (11th Cir.1989); *United States v. Russell*, 870 F.2d 18, 20–21 (1st Cir.1989); *see* 18 U.S.C. § 3742(a)(1) (1988) (defendant may appeal sentence "imposed in violation of law"). We are not faced with that situation. In this case the maximum sentence under the statute is 20 years, 21 U.S.C. § 841(b)(1)(C) (1988), which is 22 months less than the minimum guidelines range when defendant's 38 base offense level is combined with his criminal history category II. Constrained ultimately by the statute, *see Mistretta v. United States*, 488 U.S. 361, 374–75, 109 S.Ct. 647, 655–56, 102 L.Ed.2d 714 (1989), the district court therefore imposed the lesser 20–year maximum sentence. It then refused to depart downwardly, not because it believed it *could not* depart downwardly, but because, as it carefully noted, defendant had not satisfied either of the two elements required for a § 5K2.13 downward departure, that is, reduced mental capacity and a causal link between that reduced capacity and the commission of the charged offense.

### III

■ Prescott next argues that the district court erred in sentencing him to imprisonment rather than committing him for care or treatment pursuant to 18 U.S.C. § 4244(d). Section 4244(d), enacted by Congress in 1984 as part of the Insanity Defense Reform Act, provides in relevant part:

> If, after the hearing [on the defendant's mental status], the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect and that he should, in lieu of being sentenced to imprisonment, be committed to a suitable facility for care or treatment, the court shall commit the defendant to the custody of the Attorney General ... [who] shall hospitalize the defendant for care or treatment in a suitable facility.

The sentencing judge found that Prescott was not suffering from a mental disease or defect that would qualify him for the provisional sentencing of § 4244(d). This is a finding of fact reviewed under a clearly erroneous standard. *See United States v. Villegas*, 899 F.2d 1324, 1341 (2d Cir.1990) (determination of defendant's competence to stand trial under 18 U.S.C. § 4241 is a question of fact).

In making her determination, Judge Burns had before her the Butner Report which stated Prescott was not suffering from a mental disease or defect, and the testimony of Prescott's examining psychiatrist, Dr. Whitney, which was to the effect that defendant's mental disorder—severe borderline personality—was not considered a mental disease or defect within the mental health community, a view opposite to that taken in his written report on this matter. In light of this proof, the district court's finding cannot be said to be clearly erroneous.

### IV

[9] Prescott's final argument is that the district court's denial of his last three motions for continuances of sentencing was arbitrary and prejudicial. On February 9 both of Prescott's attorneys moved for a continuance of his sentencing to grant them additional time to review the government's sentencing memorandum—which was filed with the court on February 2 and which was received by one of his attorneys on February 7—to allow time for Dr. Whitney to prepare a report after his February 11 psychiatric examination of appellant, and for counsel to have time to review the report. These motions came just one day after the district court—granting Prescott's motion that he be made available on February 11 for Dr. Whitney's examination—specifically warned that no further continuances of sentencing would be entertained. Both motions were denied, as was Prescott's oral motion for a continuance at the sentencing hearing.

■ A sentencing court has broad discretion respecting the scheduling of sentencing proceedings. Absent a showing both that the denial was arbitrary and that it substantially impaired the defendant's

opportunity to secure a fair sentence, we will not vacate a sentence because a continuance was denied. *See United States v. Alexander*, 860 F.2d 508, 512 (2d Cir.1988); *United States v. Weinberg*, 852 F.2d 681, 687 (2d Cir.1988). Prescott has not satisfied this standard. The district court's denials of appellant's motions were not arbitrary. It was reasonable for it to require more compelling reasons to further delay the proceedings. The denials came after Prescott had successfully moved twice for a continuance. The date of sentencing had already been pushed back two months, and over four months had elapsed since Prescott's guilty plea was entered.

Additionally, Prescott's attorneys' asserted reasons for the continuance were not persuasive. His new attorneys had sufficient time, nine days, to review the government's sentencing memorandum. This differentiates the present circumstances from those in *United States v. Sullivan*, 694 F.2d 1348 (2d Cir.1982), upon which Prescott relies. In *Sullivan* we held the district court abused its discretion in denying defendant's request for an adjournment of sentencing because—at the time when sentence was imposed—the defense attorney had not received the trial transcript and therefore had not had a reasonable opportunity to familiarize himself with it. *Id.* at 1348–49. Prescott's attorneys had the government's sentencing memorandum in advance of sentence, and the time afforded Prescott's attorneys was sufficient to enable counsel to familiarize themselves with the contents of that memorandum.

Defendant's attorneys' failure to schedule his psychiatric examination until five days before the hearing further undermines the suggestion of arbitrariness. Prescott had been granted a motion for continuance in part to obtain an independent psychiatric evaluation more than a month prior to the sentencing hearing. Whatever time pressures were felt in connection with presenting Dr. Whitney's testimony were caused by defense counsel's selection of a doctor who would not be available until such a late date, without informing the sentencing court of the problem. Hence, the pressure stemmed from counsels' own actions and not from any

arbitrary action on the part of the district court. *Cf. Sullivan*, 694 F.2d at 1348 (district court abused its discretion in not granting adjournment because defendant and counsel not responsible for delay in obtaining trial transcript).

Neither did Prescott show that his opportunity to obtain a fair sentence was prejudiced by the lack of a continuance. As indicated, defense counsel had sufficient time to familiarize themselves with the government's sentencing memorandum which contained the same information as the presentence investigation with the only addition being some additional, corroborative material. They were also allowed, though perhaps more quickly than they wished, to have Dr. Whitney conduct an examination and present his findings to the attorneys and the court. Although appellant may have been able to present more evidence of a mental condition supporting his request for a downward departure had he been granted a continuance, he nevertheless was able to submit to the court both Dr. Whitney's report and testimony, and he has not suggested what he would have done differently had he been given more time. We see no prejudice.

### CONCLUSION

Accordingly, for the reasons stated the sentence of the district court is affirmed.