UNITED STATES

v.

Jesus LAUREANO, Defendant.

No. 98 CR. 692–01(RWS).

United States District Court, S.D. New York.

April 17, 2001.

Kevin S. Reed, Asst. U.S. Atty., Mary Jo White, United States Atty., Criminal Div., New York City, for United States.

Roger L. Stavis, New York City, for Roger Chavez.

Sanford M. Katz, Herman Graber, New York City, for Jesus Laureano.

## SENTENCING OPINION

SWEET, District Judge.

Pursuant to a written plea agreement, defendant Jesus Laureano ("Laureano") pled guilty on November 22, 2000 to conspiring to distribute and possess with intent to distribute five grams and more of cocaine base (crack) in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). For the reasons set forth below, Laureano will be sentenced to 97 months of incarceration, to be followed by a four-year term of supervised release. *See* 21 U.S.C. §§ 841(b)(1)(B), 846; U.S.S.G. § 5D1.2. A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

**The Defendant**

Laureano was born in the Dominican Republic in 1958, the sixth of seven children born to the marital union of Ana Rolet, who sold coal, and Alfredo Laureano, who worked as a farmer before his death. He completed the ninth grade there before leaving school to work to help support the family.

In 1979, Laureano obtained a Visa to enter the United States in order to pursue his vocation as an amateur boxer. Soon thereafter, he married Rosa Brobon, with whom he has four children: Stacy, age 20, a soldier in the U.S. Army; Heidi, an 18 year-old college student; Nakira, 13; and Tracey, 12. Rosa lives with all four daughters in the East Village of Manhattan and works in a laundromat. Laureano reports receiving permanent resident status in 1980 and has worked as a taxi cab driver.

When he was approximately 35 years old, Laureano began occasionally sniffing cocaine. He was arrested on the instant charge on June 16, 1998 as a result of a New York City Police Department (N.Y.PD) investigation in which undercover officers purchased crack from Laureano and an accomplice on several occasions.

Soon after he was arrested, Laureano banged his head on the courthouse elevator in frustration at a ten-year custodial plea offer, and later attempted to hang himself while in custody at Lutheran Hospital. Laureano was prescribed the antidepressant medication, Paxil, and reportedly no longer has thoughts of suicide. However, a court-ordered psychiatric evaluation conducted on April 22, 1999 reported that Laureano "currently suffers from severe mental illness, specifically from an Adjustment Disorder with Mixed Disturbance of Emotions and Conduct." In the forensic psychiatrist's professional opinion, Laureano was at that time "unable to demonstrate a reasonable understanding of the legal proceedings against him and to assist his attorney in his defense with a reasonable degree of rational understanding and is therefore not fit to proceed at this time."

Laureano was hospitalized to treat his mental illness pursuant to this recommendation, and pled guilty after the Court determined that he was able to understand the charges against him, that he wished to plead guilty, and was able to comprehend the implications of pleading guilty. As of the date of the plea, Laureano reported that he was not under the influence of any

medications or under a doctor's care. Under the questioning required by Rule 11, Laureano's attorney confirmed his belief that Laureano's plea was voluntary and entered with an understanding of the consequences.

**The Guidelines**

The Presentence Report ("PSR") prepared by the United States Probation Office rates Laureano's offense conduct, participating in the total distribution and possession of from 50 and 150 grams of crack cocaine, at a base offense level of 32. *See* U.S.S.G. § 2D1 .1(c)(4). As Laureano recognized his responsibility for the offense in a timely plea allocution, he receives a three-level reduction pursuant to § 3E1.1(a) and (b), for a total offense level of 29.

Laureano has one criminal history point for a 1993 New York County conviction for assault with intent to cause physical injury with a weapon, for which he received a sentence of five years on probation. *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(e)(2). As the instant offense was committed while Laureano was on probation for the stabbing offense, three additional points are added pursuant to § 4A1.1(d). Therefore, Laureano has a Criminal History Category of II.

The applicable Guideline range for a defendant with a total offense level of 29 and a Criminal History Category of II is 97 to 121 months.

**Downward Departure**

The Probation Office notes that sentencing Laureano to the statutory mandatory minimum of 60 months would satisfactorily address the sentencing objectives of punishment and deterrence under the circumstances. *See* 21 U.S.C. §§ 841(b)(1)(B), 846. Defense counsel has reserved the right to move for a downward departure to the mandatory minimum based upon Laureano's diminished capacity, pursuant to Guidelines § 5K2.13.

Section 5K2.13 authorizes the following departure for diminished capacity:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13.

 Therefore, a defendant must show two factors in order to receive a downward departure under this section: " 'reduced mental capacity and a causal link between that reduced capacity and the commission of the charged offense.' " *United States v. Piervinanzi*, 23 F.3d 670, 684 (2d Cir.1994) (quoting *United States v. Prescott*, 920 F.2d 139, 145–46 (2d Cir.1990)), *cert. denied*, 513 U.S. 904, 115 S.Ct. 267, 130 L.Ed.2d 185 (1994), 513 U.S. 900, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994).

 The only mental capacity evidence presented pertains to Laureano's condition subsequent to the offense, namely, his reaction to arrest, incarceration, and potential sentence. Nothing in the court-ordered psychiatric examination suggests that Laureano committed the offense as a result of any reduced mental capacity. Rather, the report suggests that Laureano's condition arose later, as a result of his prosecution and conviction. Without evidence of a causal link between the offense and diminished capacity, a downward departure pursuant to § 5K2.13 is not authorized.

## The Sentence

Laureano will be sentenced to 97 months of imprisonment, with consideration for time served, to be followed by four years of supervised release pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 846, and § 5D1.2(b) of the Guidelines. Supervision shall be in the district of residence.

Laureano shall observe all mandatory and standard supervised release conditions, including that he shall not: (1) commit another federal, state or local crime; (2) illegally possess a controlled substance; or (3) possess a firearm or destructive device.

In addition, the following special conditions shall be imposed. First, Laureano shall participate in a program approved by the United States Probation Office for substance abuse, which program may include testing to determine whether he has reverted to the use of drugs or alcohol. Laureano will be required to contribute to the costs of services rendered (copayment) in an amount to be determined by the probation officer, based on ability to pay or availability of third-party payment.

Second, Laureano shall participate in a mental health treatment program approved by the United States Probation Department. Laureano shall be required to contribute to the costs of services rendered (copayment) in an amount to be determined by the probation officer, based on ability to pay or availability of third-party payment.

Third, Laureano shall comply with the directives of the Immigration and Naturalization Service and the Immigration Laws.

Laureano is to report to the nearest Probation Office within 72 hours of release from custody.

The mandatory special assessment of $100 is due immediately.

It is so ordered.