United States v. Drivas

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of April, two thousand fourteen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge*,
> ROBERT D. SACK,
> > *Circuit Judge*,
> EDGARDO RAMOS,
> > *District Judge*.[*]

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                    No. 13-3674

JONATHAN WAHL, IRINA SHELIKHOVA,
SERGEY ZHAMARYAN, ELENA GIRENKO,
KATHERINA KOSTIOCHENKO, SERGEY V.
SHELIKOV, LEONID ZHELEZNYAKOV,
VERONYKHA TCHERNYTCHENKO, LARISA
SHELABADOVA, ALEXANDER ZARETSER,
ANATOLY KRAITER, VLADIMIR KORNEV,

---

[*] The Honorable Edgardo Ramos, of the United States District Court for the Southern District of New York, sitting by designation.

YELENA GALPER, MAKSIM SHELIKHOV,
YURI KHANDRIUS,

*Defendants*,

GUSTAVE DRIVAS,

*Defendant-Appellant*.

_____

For Defendant-Appellant Gustave Drivas:    SIDNEY BAUMGARTEN, Devereaux & Associates,
New York, NY.

For Appellee the United States:    WILLIAM P. CAMPOS (David C. James, *on the brief*),
Assistant United States Attorneys, *for* Loretta E.
Lynch, United States Attorney for the Eastern
District of New York, Brooklyn, NY.

Appeal from a judgment of conviction and sentence imposed by the United States District Court for the Eastern District of New York (Gershon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and is hereby **AFFIRMED**.

Defendant-Appellant Gustave Drivas appeals a judgment of conviction and sentence entered on September 26, 2013, by the United States District Court for the Eastern District of New York (Gershon, *J.*). Drivas was convicted following a jury trial of one count of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and one count of health care fraud, in violation of 18 U.S.C. § 1347.[2] The district court principally sentenced Drivas to a total of 151 months' imprisonment, comprising 120 months for the conspiracy count and thirty-one months for the fraud count. Drivas challenges both his conviction and the reasonableness of his sentence

_____

[2] The jury acquitted Drivas of one count of conspiracy to pay health care kickbacks, in violation of 18 U.S.C. § 371.

on appeal. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal. For the reasons that follow, we will affirm.

We turn first to Drivas's argument that the government's evidence at trial was insufficient to support his convictions. We review a challenge to the sufficiency of the evidence *de novo*, but "view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence," *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (alteration, citations, and internal quotation marks omitted). Indeed, we have emphasized the importance of deference to the jury's findings in the conspiracy context "because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Santos*, 541 F.3d 63, 70 (2d Cir. 2008) (quoting *United States v. Morgan*, 385 F.3d 196, 204 (2d Cir. 2004)). Applying those standards to the case before us, we have no trouble concluding that the government's evidence was sufficient to permit a rational finder of fact to find the elements of each crime beyond a reasonable doubt.

Drivas's sole contention on appeal regarding the sufficiency of the evidence is that the government failed to prove either that he knowingly and willfully executed a scheme to defraud Medicare (an element of the substantive count charging Medicare fraud), or that he knowingly and willfully agreed to join the larger conspiracy among his co-defendants to defraud Medicare (an element of the conspiracy count). His arguments as to each count are duplicative: he contends that there was insufficient evidence of his knowledge and intent of the scheme to

3

commit healthcare fraud. For the sake of concision, we will canvass some of the government's proof at trial before discussing each count of conviction.

The conspiracy to commit healthcare fraud charged in Drivas's indictment involved several co-conspirators. The government alleged that over a five-year period, Drivas and his co-conspirators operated clinics in Brooklyn, New York, that fraudulently billed Medicare for approximately $70 million in medical services and tests that were never performed, medically unnecessary, or performed poorly by unlicensed individuals.

Evidence at trial documented that Drivas was associated with a number of medical clinics in Brooklyn, New York, which operated under different names and in different locations throughout the charged conspiracy. The first such clinic was incorporated on March 1, 2005, and its certificate of incorporation and supplier agreement with Medicare described Drivas as its president. A number of Medicare enrollment forms submitted on behalf of the later clinics identified Drivas as an "owner" or an "authorized official" of the clinics. In 2007, one of Drivas's alleged co-conspirators approached him about "expanding his panel and being enrolled in Medicare." Drivas's co-conspirator testified that he provided Drivas the necessary Medicare forms to sign, and that Drivas signed all of the documents without question. By signing the forms, Drivas certified to the agency that the clinics' Medicare applications were truthful and correct.[3] Yet, apart from a brief period when he was the sole medical doctor associated with the clinics, Drivas saw no patients at the clinics and appeared at the clinics only occasionally in

---

[3] Drivas contends that even a "cursory" review of the clinics' incorporation papers would reveal that his signature was forged, and that his co-conspirators "forged and filed" other documents on which Medicare relied. But the evidence presented was sufficient to permit a reasonable jury to find that Drivas did indeed sign the documents at issue.

order to collect an average salary of approximately $12,166 per month between January 2007 and June 2010.

Notwithstanding the fact that Drivas did not see patients, the clinics with which he was associated used Drivas's identification number to bill Medicare for approximately $20,932,044 in services he allegedly performed. Indeed, the clinics billed Medicare for more than 30,000 "office visits" by Drivas—i.e., medical services allegedly provided while Drivas was physically present in the clinic building—during the period of the charged conspiracy.They also billed for tens of thousands of services that Drivas had purportedly "rendered" to patients over that period.

Evidence at trial indicated that the clinics were not delivering legitimate medical services to the patients who visited. Instead, individuals without medical degrees would generate claim forms based upon a template, would impersonate doctors, and would prescribe treatments. The patients would then be paid a "kickback" from a room inside the clinic. The clinics paid out as much as $12,500 per day in kickbacks to their patients, and a "movie theater line" would occasionally form outside of the room in which kickbacks were distributed. A poster hung in this room in which a woman appeared to "shush" the viewer, with the phrase "Don't Blab" printed in Russian.

At trial, Jonathan Wahl, one of Drivas's co-defendants, testified that while he was employed as a doctor at one of the clinics, he witnessed the woman who was in charge of the room in which kickbacks were paid standing in a kitchenette area at the clinic. After the woman leaned forward, a large bundle of currency fell from her blouse to the floor. She hurriedly retrieved the cash and implored Dr. Wahl not to inform anyone of what he had seen. Wahl also described one of his exchanges with another doctor at the clinic, during which it became clear

5

that a patient had been visiting the clinic even though the patient's son was a doctor elsewhere. Wahl was told that the patient was visiting the clinic because "her son doesn't pay her to go to his clinic." Gov't App. 23. Wahl further testified that he informed Drivas of this exchange, at which time Drivas responded that he would talk to individuals at the management office of the clinic. Drivas returned to speak with Wahl a few minutes later and told him that "it didn't happen and it ain't going to happen anymore." Gov't App. 25. Soon thereafter, an individual in the management office reprimanded Wahl, telling him to bring all future complaints directly to him rather than to Drivas.

Finally, we note that evidence introduced at trial included an affidavit that Drivas signed on January 31, 2007 (the "2007 affidavit"), which was more than three years before the alleged scheme to defraud concluded.[4] In that affidavit, Drivas represented that a number of no-fault insurance claims filed by professional service corporations that he owned (including several of the clinics) had been filed without his authorization. Drivas further averred that "[m]ost of the professional corporations that list my name on the corporate paper work and public records were secretly owned and controlled by laypersons who I now know are legally prohibited from owning and controlling medical practices." App. 195. Drivas's affidavit continued: "My understanding is that all profits from the corporations were funneled to laypersons through fees

---

[4] Drivas also appeals the district court's evidentiary ruling that this affidavit was admissible. For the purposes of a challenge to the sufficiency of the evidence, we consider the evidence given at trial regardless of its admissibility. *See McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (noting that a reversal for sufficiency of the evidence is tantamount to the determination that the trial court should have entered a judgment of acquittal, and that "a reviewing court must consider all of the evidence admitted by the trial court, regardless whether that evidence was admitted erroneously") (internal quotation marks omitted).

for management and or billing and collection services so that the laypersons could illegally profit from medical services," *id.*

Against this factual backdrop, we conclude that the government's evidence at trial was plainly sufficient to overcome Drivas's arguments on appeal. As to the substantive offense of health care fraud, evidence that Drivas incorporated the first clinic, signed applications permitting Medicare reimbursement for the clinics' activities, drew a salary throughout the period of the scheme, and was expressly warned about kickbacks by one of his co-defendants in the middle of the scheme would permit a reasonable fact finder to conclude that Drivas knowingly and willfully participated in the scheme to defraud Medicare. As to the conspiracy count, it is well settled that a defendant's knowing agreement to join a conspiracy may be proved by circumstantial evidence. *See United States v. Lorenzo*, 534 F.3d 153, 161 (2d Cir. 2008) ("[A] defendant's knowing agreement to join a conspiracy must, more often than not, be proven through circumstantial evidence." (quoting *United States v. Nusraty*, 867 F.2d 759, 764 (2d Cir. 1989))). Here, Drivas's decision to become medical director of the clinics and to certify the clinics' Medicare applications permitted the conspiracy to operate; indeed, he was the only medical doctor associated with the founding of the first clinic. Accordingly, we conclude that a rational fact finder could have reasonably determined that Drivas knowingly and willfully agreed to join the conspiracy. *See United States v. Heras*, 609 F.3d 101, 107 (2d Cir. 2010) (holding that a jury may reasonably infer "that the defendant has adopted the known goal of the crime as his own" where the defendant knows of the objective and takes actions to facilitate the objective).

Drivas has also challenged the inclusion of a conscious avoidance charge in the jury instructions. "We review a claim of error in jury instructions *de novo*, reversing only where,

viewing the charge as a whole, there was a prejudicial error." *United States v. Quattrone*, 441 F.3d 153, 177 (2d Cir. 2006) (internal quotation marks omitted). We have permitted conscious avoidance instructions where there is direct or circumstantial evidence that a defendant "was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Rodriguez*, 983 F.2d 455, 458 (2d Cir. 1993); *see also United States v. Goffer*, 721 F.3d 113, 127 (2d Cir. 2013). We have also permitted the use of conscious avoidance instructions for specific intent crimes, such as the offense of conspiracy; but we have cautioned district courts that such charges should acknowledge that while "the conscious-avoidance concept is pertinent to knowledge or sincerity of belief," a finding that a defendant consciously avoided knowledge will not automatically provide the "basis for finding purpose or for finding intent as a whole." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1196 (2d Cir. 1989). Having reviewed the court's instructions of law to the jury in this case, we find that the district court faithfully applied our precedents in describing the requirements for a finding of conscious avoidance and committed no error in giving the charge to the jury. Evidence at trial demonstrated that Drivas received many "red flags," including his conversation with Wahl and the facts described in the 2007 affidavit, from which a reasonable jury could find that Drivas was aware of a high probability that laypeople were operating his enterprises to generate unlawful profits but deliberately chose to avoid actual knowledge. The district court's charge was careful to distinguish a finding of "willfulness" from a finding of "knowledge," and further cautioned that "Drivas may not be convicted if you find that he actually believed in good faith that false and fraudulent claims were not being submitted to Medicare." App. 217. Accordingly, we find no error in the district court's jury instructions.

8

Drivas's final challenge to his conviction is that the district court committed reversible error in admitting the 2007 affidavit, in which he disclosed his knowledge that laypersons were unlawfully operating the clinics he owned and that those laypersons were "illegally profit[ing]" from the enterprise. Drivas contends that this evidence was inadmissible under Federal Rule of Evidence 408, which prohibits, in pertinent part, the use of statements made during compromise negotiations to prove the validity or amount of a disputed claim, or to impeach a witness by a prior inconsistent statement or contradiction. Rule 408(b) does, however, provide an exception permitting the court to admit such evidence "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).

The district court denied Drivas's motion to exclude the 2007 affidavit after concluding that it was being offered not to impeach Drivas but instead to prove Drivas's knowledge that the clinics were operating in his name. The district court further issued a limiting instruction, which instructed the jury that they could only consider the affidavit for the purpose of showing that "Drivas knew that there [were] several clinics operating under his name." App. 249.

We afford district courts broad discretion in determining whether a statement is admissible for "another purpose" under Rule 408(b), *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999), and we have emphasized that Rule 408's exception "intends to exempt from the absolute prohibition of the Rule evidence focused on issues different from the elements of the primary claim in dispute" in the settlement negotiations. *PRL USA Holdings, Inc. v. U.S. Polo Ass'n Inc.*, 520 F.3d 109, 114 (2d Cir. 2008). We have, moreover, affirmed the use of such evidence to prove a defendant's knowledge in other contexts. *See, e.g.*, *United States v. Gilbert*,

9

668 F.2d 94, 97 (2d Cir. 1981). We discern no reason to depart from those precedents here, and note that the use of Drivas's affidavit on the facts of this case does not upset the rule's intended public policy of encouraging settlements and avoiding wasteful litigation. Consequently, we affirm Drivas's conviction on both counts, and turn to his appeal of his sentence.

Drivas appeals the 151-month incarcerative sentence imposed by the district court. We review his sentence for "reasonableness." *United States v. Gilliard*, 671 F.3d 255, 258 (2d Cir. 2012). Under this "deferential abuse-of-discretion standard," we first consider whether the district court committed procedural error. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (internal quotation marks omitted). Among other grounds, "[a] district court commits procedural error where it fails to calculate the Guidelines range . . ., makes a mistake in its Guidelines calculation, . . . treats the Guidelines as mandatory[, or] . . . does not consider the § 3553(a) factors." *Id.* at 190 (internal citations omitted). Factual findings will be overturned "only if they are clearly erroneous." *United States v. Batista*, 684 F.3d 333, 345 (2d Cir. 2012) (quoting *United States v. Farah*, 991 F.2d 1065, 1068 (2d Cir. 1993)).

Drivas contends that the district court committed reversible error in calculating the foreseeable loss caused by his offenses of conviction by considering the total amount that the clinics billed to Medicare (approximately $77.5 million) rather than the billings attributed to Drivas and actually paid by Medicare (approximately $12.9 million). A district court may hold a defendant accountable for the losses caused by his co-conspirators after finding that "the acts were committed in furtherance of the jointly undertaken activity and could reasonably have been foreseen by the defendant," *United States v. Studley*, 47 F.3d 569, 573 (2d Cir. 1995), and we have held, therefore, that "a district court must make two findings: 1) that the acts were within

10

the scope of the defendant's agreement and 2) that they were foreseeable to the defendant," *id.* at 574. Here, the district court made two particularized findings pursuant to *Studley*. First, the district court found that Drivas knew he was enabling each of the clinics to "engage in widespread fraud" despite certifying to Medicare that the clinics were not submitting fraudulent claims. App. 386. Second, the district court found that Drivas was associated with each of the clinics at the "highest level," and that as a doctor he would be aware of the amount that the fraudulent claims would cost Medicare. *Id.* at 389. We conclude that neither finding was clearly erroneous, and therefore we reject Drivas's challenge to the district court's decision to hold him accountable for the entire loss caused by the conspiracy. For similar reasons, we reject Drivas's contention that the district court should have awarded Drivas a two-level adjustment for taking a minor role in the offenses; on these facts, it was not clear error for the district court to conclude that Drivas played an "integral" role in the scheme and that Drivas had not carried his burden to prove he played a minor role in the offenses of conviction. *See* App. 384; *see also United States v. Castaño*, 234 F.3d 111, 113 (2d Cir. 2000) ("The defendant must prove by a preponderance of the evidence that [he] is entitled to a minor role adjustment . . . .").[5]

Drivas also contends that the district court should have awarded him an "offset" for those services that were actually performed. However, as the district court noted, "even if there were some slight offsets that could have been available for the brief period that the defendant claims that he was actually seeing patients in a legitimate way," the loss amount still would have easily

---

[5] As the parties have noted, we have not always been consistent in articulating our standard of review for role adjustments. *See United States v. Labbe*, 588 F.3d 139, 145 n.2 (2d Cir. 2009). At this juncture, however, we need not decide the issue because "our conclusion would be the same under any level of deference." *United States v. Beckford*, 545 F. App'x 12, 15 (2d Cir. 2013) (citing *United States v. Conde-Falon*, 420 F. App'x 56, 58 n.1 (2d Cir. 2011)).

11

exceeded the Guidelines threshold pursuant to which Drivas's offense level was calculated. App. 385. We find no clear error in the district court's assessment of the magnitude of the hypothetical offset and thus agree with its conclusion that the loss calculation would have yielded the same total offense level had an "offset" been given. Accordingly, any error on this score would have been harmless.

Finally, Drivas argues that the district court erred in denying him a hearing pursuant to *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), because there were "conflicts between factors impacting sentencing," Brief for Defendant-Appellant at 41–42. We afford district courts broad discretion in deciding what procedures to employ to resolve factual disputes at sentencing, and have held that the defendant's due process right to contest facts relevant to sentencing does not entail a *per se* right to a full *Fatico* hearing. *See United States v. Prescott*, 920 F.2d 139, 144 (2d Cir. 1990). Here, the district court rejected Drivas's request for a *Fatico* hearing after noting that the evidence documenting the loss at trial was "ample," that the evidence was furnished to the defense, and that the defendant's claim that he provided legitimate services, even if true, would not decrease the loss amount enough to alter the total offense level under the Guidelines. *See* App. 385. On these facts, we do not find any abuse of discretion in the district court's choice of procedure to resolve the disputed facts at sentencing and therefore conclude that it was no error for the district court to decline to hold a *Fatico* hearing.

Having satisfied ourselves that Drivas's sentence was procedurally reasonable, we consider the substantive reasonableness of a sentence of 151 months' imprisonment for the two counts. A sentence will be set aside as substantively unreasonable only in the "exceptional" case where the sentence "cannot be located within the range of permissible decisions." *Cavera*, 550

12

F.3d at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). Our review for substantive reasonableness enquires whether the sentence imposed works manifest injustice or shocks the conscience. *See United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009) ("[T]hese standards provide a backstop for those few cases that, although procedurally correct, would nonetheless damage the administration of justice because the sentence imposed was shockingly high, shockingly low, or otherwise unsupportable as a matter of law."). To the extent that Drivas challenges the substantive reasonableness of his sentence, we reject the contention that a 151-month sentence for his crimes was so shockingly high as to fall outside the range of permissible decisions. Accordingly, we affirm the district court's sentence.

We have considered the defendant's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

13