08-0673-cr
U.S. v. Labbe

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

Heard: October 16, 2009                    Decided: December 4, 2009

Docket No. 08-0673-cr

- - - - - - - - - - - - - - - - - -
UNITED STATES OF AMERICA,
          Appellee,

                    v.

KENNY OLA LABBE,
          Defendant-Appellant.
- - - - - - - - - - - - - - - - - -

Before: NEWMAN, POOLER, and KATZMANN, <u>Circuit Judges</u>.

       Appeal from the January 31, 2008, judgment of the United States

District Court for the Southern District of New York (Robert W. Sweet,

District Judge) sentencing the defendant to 87 months' imprisonment

for interstate transportation of stolen property in violation of 18

U.S.C. § 2314.  Defendant contends that he was improperly denied a

minimal role adjustment that the District Judge had contemplated

giving in a written sentencing opinion.  We conclude that the decision

not to impose the contemplated adjustment requires findings, and we

remand for that purpose.

       Remanded.

Devin McLaughlin, Langrock Sperry & Wool, LLP, Middlebury, VT, for Defendant-Appellant.

Seetha Ramachandran, Asst. U.S. Atty., New York, N.Y. (Lev L. Dassin, Acting U.S. Atty., Iris Lan, Asst. U.S. Atty., New York, N.Y., on the brief), for Appellee.

JON O. NEWMAN, Circuit Judge.

This sentencing appeal challenges a District Judge's denial at a sentencing hearing of a minimal role adjustment, U.S.S.G. § 3B1.2(a), in making a Sentencing Guidelines calculation after the Judge had stated in a carefully prepared "Sentencing Opinion" that the defendant was entitled to the adjustment. Kenny Ola Labbe, a citizen of Nigeria, appeals from the January 31, 2008, judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, District Judge), sentencing him principally to 87 months' imprisonment upon his plea of guilty to interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. Although we have no desire to inhibit the commendable practice of issuing an indication of a likely sentence in advance of a sentencing hearing, we conclude that procedural error occurs when a defendant is not alerted to a likely change from a judge's anticipated Guidelines calculation and when that change is not sufficiently supported by the Judge's findings. We therefore remand so that at a renewed sentencing hearing, Labbe, now on notice that a minimal role adjustment is likely

-2-

to be denied, can personally and through counsel make a full argument for such an adjustment and so that the District Judge, after considering both the Government's and the defendant's presentations concerning that adjustment, make a fresh determination, supported by appropriate findings, as to whether an adjustment is warranted.

Background

Labbe was indicted for transporting stolen property in interstate commerce, in violation of 18 U.S.C. § 2314, and conspiracy to commit that offense, in violation of 18 U.S.C. § 371. The conduct constituting the substantive offense was alleged to have occurred between December 2005 and January 2006. The conspiracy was alleged to have spanned the interval between 2002 and January 2006. These charges stemmed from an elaborate scheme to steal and cash checks sent to a lockbox maintained by JP Morgan Chase Bank ("Chase"). Chase account holders sent checks to the lockbox to be credited to their accounts. One of the conspirators stole quantities of checks from the lockbox. Another conspirator sent unsolicited e-mails to strangers throughout the United States claiming to seek help to complete a financial transaction. Some of these strangers became unwitting participants in the scheme by providing their names and addresses to conspirators. Conspirators removed the true payee's name from a stolen check and substituted the name of an unwitting participant. The altered check was then mailed to the participant, who deposited

-3-

the check in his own account and wired a portion of the proceeds to an overseas bank account controlled by a conspirator.

Labbe pled guilty to both counts of the indictment. At the plea colloquy before a Magistrate Judge, he acknowledged that his acts constituted the elements of the charged offenses, but he asserted that he had not acted "in the way" the offenses were detailed in the indictment. Questioned carefully by the Magistrate Judge, Labbe stated that an individual had approached him and asked for help in mailing some checks. Labbe said an individual gave him a list of names, and Labbe had to match the list with certain checks, place addresses he had been given on envelopes, and send the checks from a Federal Express office. He was to do this during a brief interval while the individual was out of the country. Labbe admitted that he knew the checks were stolen, but denied knowing they had been altered. He subsequently told the Probation Department that he was promised some indefinite form of payment, which he never received, and that he pocketed only $400 that was left over from the funds given him to send the checks.

The Presentence Report ("PSR") began the Guidelines calculation with a base offense level of 6, see U.S.S.G. § 2B1.1(a)(2), added 20 levels for a loss greater then $7 million but less than $12 million,

-4-

see id. § 2B1.1(b)(1)(K),[1] added 4 levels because the offense involved more than 50 victims, see id. § 2B1.1(b)(2)(B), and added 2 levels because a substantial part of the offense was committed outside the United States, see id. § 2B1.1(b)(9)(B). Subtracting 3 levels for acceptance of responsibility, see id. § 3E1.1(a), (b), the PSR arrived at an adjusted offense level of 29, which, with Criminal History Category III, yielded a sentencing range of 108 to 135 months. The PSR recommended a term of 108 months.

After receiving sentencing submissions from the Government and the defendant, Judge Sweet issued a 21-page "Sentencing Opinion," dated January 23, 2008. Describing the offense conduct, Judge Sweet wrote that Labbe and others "caused the stolen lockbox checks . . . to be altered" and "removed the original payees' names from the stolen checks and replaced them with the names of participating e-mail recipients," that Labbe sent packages of stolen checks via Federal Express to participating e-mail recipients, and that Labbe asked an internet café owner to scan and e-mail a document that contained a list of individuals, their contact information, and dollar amounts. Judge Sweet also stated that a Federal Express employee had told an FBI agent that Labbe had sent packages almost every weeknight from

---

[1]The loss amount was determined by multiplying the amounts of the checks Labbe sent on the day of his arrest, more than $500,000, by the number of weeknights Labbe was observed sending packages from the Federal Express office.

December 25, 2005, to January 23, 2006.  Finally, Judge Sweet stated that various pieces of paper relating to the scheme had been discovered at Labbe's residence.

Using the 2007 Guidelines Manual, Judge Sweet calculated Labbe's adjusted offense level to be 23, following the PSR's calculation with one difference, which is relevant to this appeal.  Judge Sweet wrote, "Because the defendant's role in the offense was minimal, he is entitled to a mitigating role decrease of four levels, pursuant to U.S.S.G. § 3B1.2(a)." That subsection provides for a four-level reduction of the offense level "[i]f the defendant was a minimal participant in any criminal activity."  A two-level reduction is authorized if  the defendant was a minor participant. See U.S.S.G. § 3B1.2(b).  In Criminal History Category III, the adjusted offense level of 23 yielded a sentencing range of 57 to 71 months.  Judge Sweet then considered the factors identified in 18 U.S.C. § 3553(a), determined that a Guidelines sentence was warranted, and concluded, "For the instant offense, Labbe is hereby sentenced [sic] to a term of 57 months' imprisonment and a term of supervised release of three years."  He also ordered forfeiture of $44 million of currency and U.S. Postal Service money orders totaling approximately $25,000.

Also relevant to this appeal is the concluding sentence of the Sentencing Opinion: "The terms of this sentence are subject to modification at the sentencing hearing set for January 29, 2008."

-6-

Prior to the sentencing hearing, the Government sent Judge Sweet a letter, objecting to the Court's contemplated four-level reduction for a minimal role in the offense. The Government pointed out that Labbe's offense level was based only on the loss resulting from his own conduct in the conspiracy, i.e., mailing checks between December 25 and January 23. Specifically with respect to the minimal role reduction, the Government stated that Labbe had communicated with a co-conspirator in Nigeria, had "tried to send him a list of names and addresses that corresponded to people who were contacted through the email scam," and, when arrested, had various documents connected with the scam.

At the sentencing hearing, Judge Sweet first confirmed that defense counsel had reviewed the PSR and the Judge's Sentencing Opinion with Labbe. The Judge then afforded defense counsel and Labbe an opportunity to speak. Defense counsel primarily disputed the loss calculation. With respect to Labbe's role, counsel first said, "I think it is important to note that of all the people involved in this conspiracy, Mr. Labbe really was the lowest on the rung. I know that your Honor takes that into consideration in a role adjustment," and later said, "Even though he has been given a role in the offense adjustment, I don't think that truly compensates for the large 20-level increase that he is being given." Labbe told the Judge, "I really did play a very minute part in this."

-7-

In response, the Government defended the loss calculation and then said:

> I don't think he can be characterized as a minor or minimal participant in this scheme. I think the evidence shows that he had an awareness of what was in the packages, who was getting these things, trying to fax the document to Nigeria at the Internet café, the evidence that was recovered from him when he was arrested, and also the $25,000 in money orders that was found at his residence after he was arrested.

Judge Sweet then asked the prosecutor, "What is the government's view with respect to the relative participation of all three [Labbe and two other defendants scheduled for sentencing in the Southern District]?" The prosecutor ranked co-conspirator Ellis as the highest because of his activity in buying the checks and deciding which ones should be used for the scam. She then said that Labbe had participated in gathering the e-mail addresses and circulating them, and ranked Labbe below Ellis but higher than co-conspirator Hailey, the Chase employee who had stolen the checks from the lockbox.

Labbe briefly responded, apparently endeavoring to dispute the contention that he had gathered the e-mail addresses. He said that someone had given him "an e-mail to go check."

Judge Sweet then imposed sentence. He stated, "I think the government's argument and its reading of the guidelines with respect to the minor and minimal participants is right. It is a correct interpretation." He then stated that he would impose a Guidelines

sentence and apply a sentencing range of 87 to 108 months. This range was apparently derived from an adjusted offense level of 27 (the originally contemplated level of 23 plus the rejected four-level reduction for minimal role) and Criminal History Category III. Judge Sweet imposed a sentence of 87 months' imprisonment, using the bottom of the applicable range. The bottom of the range with the contemplated minimal role adjustment would have been 57 months. The disallowance of the adjustment therefore raised the sentence by two and one-half years.

Defense counsel then sought to argue for the minimal role adjustment, stating that Labbe "had no independent decision-making. He was told to pick up checks and he was told to take them to a mail depository. That is what he did. He didn't steal the checks. He wasn't an insider. He was the person who was used by everybody else to take the checks and mail them off." Judge Sweet responded, "I understand."

After Judge Sweet imposed a forfeiture of $12 million, the following occurred:

> THE DEFENDANT: Your Honor, your Honor, your Honor —

> MR. SEIDLER [defense counsel]: I spoke to Mr. Labbe downstairs and explained to Mr. Labbe your sentencing opinion and he is extremely upset now because he thinks I misled him because your Honor imposed a more severe sentence than the sentencing opinion.

> THE COURT: Yes, well, the sentencing opinion, Mr. Labbe, was one which I determined but I did not have the advantage of the government's comments which I have received

afterwards and I changed my mind.

## Discussion

On appeal, Labbe challenges the disallowance of the minimal role adjustment, contending that the District Court's change from the allowance of the adjustment in the sentencing opinion is not supported by adequate findings.

We have not previously encountered a sentence challenged on the ground that it differs from the sentence contemplated in a judge's sentencing opinion issued after receipt of the PSR but prior to the sentencing hearing. Labbe makes no claim that the issuance of that opinion impaired either his or his counsel's right to be heard prior to the imposition of sentence. See Fed. R. Crim. P. 32(i)(4)(A)(i), (ii). No doubt most sentencing judges have formulated a tentative sentence after reading a PSR. Judge Sweet's issuance of a sentencing opinion shares his tentative view with the parties and usefully focuses their attention on matters worthy of dispute by written submission or oral presentation. At the same time, despite the concluding disclaimer stating, "The terms of this sentence are subject to modification at the sentencing hearing," the sentencing opinion understandably raised expectations, which were heightened by the words, "For the instant offense, Labbe is hereby sentenced to a term of 57 months' imprisonment."

We consider first whether the District Judge, having issued a sentencing opinion that included the definitive words "is hereby

sentenced," should have alerted the defendant to the distinct likelihood that there would be an adverse change, notably the disallowance of the role adjustment. The Supreme Court recently considered an issue concerning appropriate notice from a sentencing judge in a different context. In Irizarry v. United States, 128 S. Ct. 2198 (2008), the Court ruled that, once the Guidelines became advisory, a sentencing judge need not give notice of an intention to impose a non-Guidelines sentence. Under the mandatory Guidelines regime, the Court had ruled that a sentencing judge must notify the parties of an intention to make an upward departure. See Burns v. United States, 501 U.S. 129, 138 (1991).

The Court's explanation in Irizarry is instructive for our situation. First, the Court noted, "Now faced with advisory Guidelines, neither the Government nor the defendant may place the same degree of reliance on the type of 'expectancy' that gave rise to a special need for notice in Burns." Irizarry, 128 S. Ct. at 2202-03. The Court also said, "Sound practice dictates that judges in all cases should make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues." Id. at 2203. We think that Judge Sweet's sentencing opinion, as worded, did present the defendant with an "expectancy" that gave rise to the need for notice that a significant change was likely. And such notice was needed to provide the defendant with "an adequate opportunity" to

-11-

oppose the contemplated change and argue for a role adjustment. Indeed, the case for notice here is stronger than the one presented in Burns. The defendant there knew from the Guidelines Manual, case law, and established practice that an upward departure was available, but the Court nevertheless ruled that he needed notice of a departure that the judge was contemplating. In the pending case, the defendant had less reason to expect a change disallowing the role adjustment that was included in the sentencing opinion than the defendant in Burns had to expect an upward departure. Such a change is likely to be more infrequent and more unexpected than were departures under the mandatory Guidelines regime.

With respect to the merits of Labbe's claim for a role adjustment, we recognize the "very wide latitude" of sentencing judges "to decide the proper degree of punishment for an individual offender and a particular crime," United States v. Cavera, 550 F.3d 180, 188 (2d Cir. 2008) (in banc), and we also recognize that a district judge has "discretion" in deciding whether to accord a defendant a role adjustment. See United States v. Habbas, 527 F.3d 266, 274 (2d Cir. 2008). However, although our review is deferential, a sentencing court "is required to make findings sufficient to permit appellate review." United States v. Legros, 529 F.3d 470, 474 (2d Cir. 2008). Moreover, just as a sentencing judge "must make specific findings as to why a particular subsection of § 3B1.1 adjustment applies," United States v. Ware, 577 F.3d 442, 451 (2d Cir. 2009), we think the judge

-12-

must also make specific findings to support the denial of a role adjustment that the judge had previously indicated to the parties an intention to make. Although all of the standards for judicial review of administrative agency action are not necessarily transferable to appellate review of district court sentences, we take some guidance from the Supreme Court's recent decision in F.C.C. v. Fox Television Stations, Inc., 129 S. Ct. 1800 (2009), concerning a change of position by the Federal Communications Commission. The Court there observed that although "the agency need not always provide a more detailed justification than what would suffice for a new policy created on a blank slate, [s]ometimes it must--when, for example, its new policy rests upon factual findings that contradict those which underlay its prior policy." Id. at 1811 (punctuation altered).

In the pending case, Judge Sweet initially described Labbe's conduct as sending the altered checks from a Federal Express office almost every weeknight during a four-week span and trying to fax to an individual in Nigeria a document with names, addresses, and amounts, a document Labbe subsequently arranged to have electronically scanned and e-mailed. Judge Sweet also wrote in his sentencing opinion that Labbe and others altered the names of the original payees from the stolen checks. Despite this conduct, and it is not clear what evidence supports the assertion that Labbe altered payees' names, the Judge tentatively concluded that Labbe's role was "minimal," entitling him to a four-level role reduction. In deciding not to make the four-

-13-

level reduction, the Judge said that he agreed with the Government's "argument" and "its reading of the guidelines with respect to the minor and minimal participants," and that he had changed his mind. We are left uncertain whether the Judge (a) attributed to Labbe more misconduct than he had originally found, and, if so, what misconduct, or (b) was interpreting the relevant guideline differently than before, or (c) was simply reassessing the significance of Labbe's misconduct on the same facts and same understanding of the guidelines as before. We note that the Government argued to the Judge at the sentencing hearing that Labbe had "participated in the gathering of the e-mail addresses," but it is unclear what evidence supports that assertion and whether Judge Sweet believed that this assertion was true.

Under all the circumstances, we conclude that the case should be remanded so that the District Court may conduct a new sentencing hearing, afford the defendant and his counsel, now alerted to the Judge's inclination not to accord a role adjustment, a full opportunity to argue for the adjustment, and then determine, on the basis of appropriate findings, whether to make a minimal role adjustment, a minor role adjustment, or no adjustment.[2]  If an

---

[2]Since we are remanding for further findings, we need not determine the standard of review appropriate for the ultimate decision as to whether a role adjustment will be made. We have recognized that "[t]his circuit has not always been consistent in describing the standard of review for [role adjustments]," United States v. Gotti, 459 F.3d 296, 349 (2d Cir. 2006), as the following decisions

-14-

adjustment is warranted, the sentence should be modified accordingly.

## Conclusion

The case is remanded for further proceedings consistent with this opinion.  After resentencing, any party may restore our jurisdiction by prompt notice to the Clerk of the Court, in which event a renewed appeal will be submitted to this will be submitted to this panel. <u>See</u> <u>United States v. Jacobson</u>, 15 F.3d 19, 21-22 (2d Cir. 1994).

---

illustrate: <u>United States v. Salameh</u>, 261 F.3d 271, 280 (2d Cir. 2001) ("With regard to the fact-sensitive question of whether a defendant merits a mitigating role reduction, we review for abuse of discretion the district court's application of the Guidelines to the circumstances of the particular case before it."); <u>United States v. Castano</u>, 234 F.3d 111, 113 (2d Cir. 2000) ("We review for clear error a sentencing court's finding that a defendant did not play a minor role in the offense."); <u>United States v. Gaston</u>, 68 F.3d 1466, 1468 (2d Cir. 1995) ("We review <u>de novo</u> the district court's legal conclusion as to whether the circumstances constitute 'minimal' or 'minor' participation.").  With respect to Guidelines calculations generally, we have also said, "We review issues of law <u>de novo</u>, issues of fact under the clearly erroneous standard, mixed questions of law and fact either <u>de novo</u> or under the clearly erroneous standard depending on whether the question is predominantly legal or factual, and exercises of discretion for abuse of discretion." <u>United States v. Selioutsky</u>, 409 F.3d 114, 119 (2d Cir. 2005) (internal citations omitted).