22-2721-cr (L)
United States v. Wynn

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023
Nos. 22-2721-cr (L); 22-2875-cr (con)

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

RASHAWN WYNN, FKA SEALED DEFENDANT #9, AKA WORMY,
KEMNORRIS KINSEY, FKA SEALED DEFENDANT #13, AKA PEP,

*Defendants-Appellants.* [†]

On Appeal from a Judgment of the United States District Court for
the Northern District of New York.

SUBMITTED: MARCH 5, 2024
DECIDED: JULY 16, 2024

Before: WALKER, NARDINI, AND MENASHI, *Circuit Judges*.

---

[†] This opinion resolves only Defendant-Appellant Rashawn Wynn's
appeal, No. 22-2721 (L). Defendant-Appellant Kemnorris Kinsey's appeal, No. 22-
2875 (con) was resolved by summary order filed 3/18/24.

Defendant-Appellant Rashawn Wynn pleaded guilty in the United States District Court for the Northern District of New York (Frederick J. Scullin, *District Judge*) to racketeering conspiracy in violation of 18 U.S.C. § 1962(d). The district court sentenced Wynn to 92 months in prison. Wynn appealed and this Court remanded for resentencing, determining that the district court erred in denying Wynn a mitigating role adjustment under U.S.S.G. § 3B1.2 without first addressing certain factors that might have supported one. At resentencing, the district court explained its reasoning more thoroughly, again denied Wynn a mitigating role adjustment, and imposed the same 92-month prison term. Wynn appeals once more, arguing that the district court erred by denying him the requested adjustment and that his term of imprisonment is substantively unreasonable. We are unpersuaded. On remand, the district court did not clearly err in concluding that Wynn failed to establish that he was substantially less culpable than the average participant in his criminal enterprise. Wynn's term of imprisonment is also substantively reasonable given his criminal conduct and history. Accordingly, we AFFIRM the judgment of the district court.

---

Nicolas Commandeur, Rajit S. Dosanjh, Assistant United States Attorneys, *for* Carla B. Freedman, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee*.

Arthur R. Frost, Frost & Kavanaugh, P.C., Troy, NY, *for Defendant-Appellant*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

Defendant-Appellant Rashawn Wynn pleaded guilty in the United States District Court for the Northern District of New York (Frederick J. Scullin, *District Judge*) to racketeering conspiracy, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d), based on his longtime involvement in the 110 Gang, a violent drug-trafficking group based in Syracuse, New York. In his plea agreement, Wynn stipulated that he participated in the gang's drug trafficking operations and personally sold 42.2 grams of crack cocaine.

The United States Probation Office calculated Wynn's advisory sentencing range under the United States Sentencing Guidelines. With a total offense level of 23 and a criminal history category of VI, Wynn faced an advisory range of 92 to 115 months of imprisonment. At sentencing, Wynn requested a further two- or three-level reduction in his offense level under U.S.S.G. § 3B1.2, on the ground that he was

3

no more than a minor participant in the criminal activity. The district court denied this request, adopted Probation's calculations, and imposed a sentence of 92 months, at the bottom of the Guidelines range.

Wynn appealed, challenging the calculation of his offense level and asserting that the district court erred in its refusal to apply a mitigating role adjustment. *United States v. Wynn*, 37 F.4th 63, 65 (2d Cir. 2022). This Court held that the district court erred in denying Wynn the adjustment "without first addressing many relevant factors that appear to support" it, and vacated Wynn's sentence and remanded for resentencing. *Id.* at 69. On remand, the district court explained its reasoning more extensively and again concluded that Wynn was not entitled to a mitigating role adjustment. The court reimposed a term of 92 months of imprisonment.

Wynn now challenges his 92-month sentence as procedurally and substantively unreasonable. Primarily, he renews his argument

that he should have received a downward adjustment because of his minor role in the activities of the 110 Gang. Wynn also contends that his sentence was substantively unreasonable when compared to the sentences of his co-conspirators. We disagree. The district court did not clearly err in concluding that Wynn failed to establish by a preponderance of the evidence that he played a minor role in the racketeering enterprise. At the resentencing hearing, the district court identified several factors, based in the record, that supported its determination that Wynn was not substantially less culpable than the average participant in the criminal activity and thus was not entitled to a mitigating role adjustment. We also conclude that Wynn's 92-month sentence—at the bottom of his correctly calculated Guidelines range—was substantively reasonable, particularly in light of his offense conduct and extensive criminal history. Accordingly, we affirm the district court's judgment.

## I.      Background

Wynn was a member of a criminal organization known as the 110 Gang, which has operated for over twenty years in a multiblock area on the southwest side of Syracuse, New York.  In October 2018, Wynn was charged in a one-count indictment with participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).   The charge stemmed from Wynn's association with the 110 Gang and participation in its pattern of racketeering activity, which included murder, robbery, drug trafficking, and fraud.[1]

The 110 Gang engaged in drug trafficking and violence, including assault and murder, to maintain control over its territory and drug distribution business.   Members of the 110 Gang also

---

[1] The indictment charged Wynn and others with conspiring from 2012 to October 25, 2018, to violate 18 U.S.C. § 1962(c), by participating, directly and indirectly, in the conduct of the 110 Gang through a pattern of racketeering activity including (1) multiple acts involving murder, in violation of New York Penal Law §§ 125.25, 110.00, and 105.15; (2) multiple acts involving robbery, in violation of New York Penal Law §§ 160.15, 160.10, 160.05, 110.00, and 105.10; (3) multiple acts indictable under 18 U.S.C. § 1029 for fraud and related activity; and (4) multiple offenses involving selling and dealing in controlled substances, in violation of 21 U.S.C. §§ 841 and 846.

resorted to violence within their territory to cement the gang's reputation as a violent criminal organization. For many members of the 110 Gang, the sale of cocaine, crack cocaine, and heroin was their primary source of income. In addition, unlike more traditional gangs, the 110 Gang did not have strict membership requirements or a clear chain of command. Its members enjoyed protection and status based on their affiliation with the 110 Gang. To protect their territory from rival gangs, members of the 110 Gang supplied themselves with firearms, known as community guns, which circulated among different gang members. Many of these firearms have been used to shoot at rival gang members, and, although Wynn was not directly involved, from 2012 through 2018, members of the 110 Gang committed at least ten shootings.

Following Wynn's indictment, the parties negotiated a plea agreement under which Wynn would plead guilty to the charged count of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d).

As a condition of his plea, Wynn admitted that (1) from at least 2012 to October 2018, he was a member of the 110 Gang; (2) over the course of five separate transactions during the indictment period, he sold a combined total of 42.2 grams of crack cocaine; (3) as a result of his membership in the 110 Gang, he was able to possess and distribute crack cocaine within the 110 Gang territory; and (4) at least some of the crack cocaine he distributed was supplied to him by other 110 Gang members.

The Probation Office prepared a Presentence Investigation Report ("PSR"), which calculated Wynn's advisory sentencing range under the Guidelines. It began by looking to U.S.S.G § 2E1.1, the Guideline applicable to racketeering conspiracy. Under § 2E1.1(a)(2), Wynn's base offense level was determined by reference to the underlying racketeering activity attributable to him, which was drug trafficking. Based on the parties' stipulation that Wynn was accountable for at least 28 grams but less than 112 grams of crack

cocaine, Wynn's base offense level under U.S.S.G. § 2D1.1(c)(8) was 24. The PSR added a two-level weapons enhancement pursuant to U.S.S.G. § 2D1.1(b)(1), because it determined that "Wynn was reasonably aware of the firearms that were carried or used in furtherance of the gang's drug trafficking activities and other acts of intimidation and violence." PSR ¶ 48. The PSR then reduced the offense level by three because of Wynn's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). This yielded a total offense level of 23.

Wynn made two primary objections to his offense level: (1) he argued that the two-level firearms enhancement was unwarranted because he did not personally possess a firearm in connection with the charged offense, and (2) he argued that he should receive a mitigating role adjustment under U.S.S.G. § 3B1.2, because "his role in the offense was either minor (which would result in a two-point

reduction), or between minor and minimal (which would result in a three-point reduction)." App'x at 29.

At Wynn's sentencing on July 27, 2020, the district court overruled both of Wynn's objections. It rejected Wynn's first argument, concluding that the firearm enhancement was proper because the record made clear that members of the 110 Gang used community guns in some of the gang's operations. The district court also rejected Wynn's request for a mitigating role adjustment. Although Wynn had been incarcerated for a significant period of his adult life, he had admitted that "he was . . . a long-time member of the 110 gang" and thus the court could not find that he was "less culpable than anybody else that was involved in this conspiracy." Government App'x at 61. The district court adopted the Probation Office's calculation of Wynn's total offense level of 23 and, after accounting for Wynn's criminal history category of VI, arrived at the advisory Guidelines range of 92 to 115 months of imprisonment.

10

After considering the relevant sentencing factors, the district court sentenced Wynn to a bottom-of-the-Guidelines term of 92 months of imprisonment, followed by a three-year term of supervised release.

Wynn appealed, arguing that the district court erred in applying the firearms enhancement and in denying him a mitigating role reduction. This Court affirmed the district court's application of the firearms enhancement but concluded that the district court procedurally erred in denying Wynn a mitigating role adjustment. *Wynn*, 37 F.4th at 69. Specifically, this Court explained that in denying the mitigating role adjustment, the district court analyzed only one of the factors relevant to such a determination: "the degree to which the defendant 'understood the scope and structure of the criminal activity.'" *Id.* (quoting U.S.S.G. § 3B1.2 cmt. n.3(C)). Thus, this Court determined that because (1) the district court did not address any of the other relevant factors that the Guidelines outlined, and (2) the record suggested that some of those factors might favor Wynn, the

11

district court's decision to deny Wynn's mitigating role adjustment was "unduly perfunctory." *Id.* at 68–69. The Court therefore vacated Wynn's sentence and remanded for resentencing. *Id*. at 69.

On remand, all parties agreed that the sole issue before the district court was whether Wynn was entitled to a mitigating role adjustment. Wynn argued that the government failed to demonstrate that he (1) participated in the planning of the 110 Gang's activity; (2) exercised decision-making authority for the gang; or (3) stood to benefit from the criminal activity. Wynn contended that his conduct was "minimal" (meriting a four-level downward adjustment) or at least "between a minimal and minor level" (meriting a three-level downward adjustment). App'x at 42-43.[2] The government argued

---

[2] As explained above, Wynn's Guidelines range for the racketeering conspiracy was calculated through a cross-reference to § 2D1.1, so that his offense level was based on the quantity of crack cocaine he had personally sold in five particular transactions, plus a two-level enhancement for the 110 Gang's use of shared firearms. Had Wynn succeeded in receiving a three- or four-level mitigating role adjustment, he would have been in the peculiar position of receiving a lower Guidelines range than if he had simply sold those drugs on his own, rather than as part of a larger racketeering enterprise.

that Wynn failed to establish his entitlement to any mitigating role adjustment, because he admitted to being a long-time member of the 110 Gang and was conscious of the scope of the gang's criminal conduct. The government further argued that Wynn's prior criminal history and his decision-making authority in connection with the 110 Gang's drug trafficking demonstrated that his involvement in the criminal enterprise was typical with respect to the other co-conspirators. In a revised PSR, the Probation Office recommended that a mitigating role adjustment not be granted for the reasons stated by the government.

At resentencing on October 4, 2022, the district court again concluded that Wynn was not entitled to any mitigating role adjustment. The court began by observing that it was "intimately familiar with the facts of this case, along with the roles of [the co-conspirators], after having presided over a two-week jury trial, during which the government presented evidence from 48 witnesses

and introduced dozens of exhibits." App'x at 78. The court explained

that, based on its thorough knowledge of the case, it was "in the best

position to determine what, if any, role adjustments may apply." *Id.*

It then explained why Wynn had not met his burden of establishing

his entitlement to a mitigating role adjustment:

> . . . . Specifically, the defendant Wynn was one of the longer serving members of the 110 gang who, by his own admissions, understood very well the gang's illegal conduct, including the drug dealing and acts of violence. He has been involved in at least two gang-related shootings, although not specifically charged as part of the instant offense. The 110 gang did not have a hierarchical chain of command and the acts committed in furtherance of the gang had little or no coordination or planning. In this respect, the degree to which the defendant participated in . . . planning or organizing the criminal activity or exercising . . . situational authority is very typical of the average participant in the offense, and therefore is not indicative of a mitigating role.
>
> Wynn did, however, make decisions and exercise autonomy over his drug trafficking activities. While it is true that Wynn did not personally engage in the acts of violence as charged in this case, he was substantially involved in the gang's drug trafficking activities. That is evidenced by his frequent and regular drug trafficking, which went well beyond the five street level deals

14

identified in the defendant's plea agreement. In this respect, Wynn's role in the offense was typical when compared to the average participant.

Wynn was incarcerated from 2011 through May 2016. Within months of being released from prison, he started selling drugs for the gang and began posting to social media photos of himself and other 110 gang members, which indicates Wynn did not intentionally disassociate with the gang; rather, his imprisonment temporarily halted his gang-related activities.

And lastly, Wynn, by his own admission, stood to benefit from and did in fact benefit from the gang's regular dealing and involvement in criminal activity which was used to facilitate the drug sales within the gang's territory.

App'x at 78-80. The district court found that the Guidelines range remained unchanged from the first sentencing (92 to 115 months) and reimposed a term of 92 months of imprisonment. This appeal followed.

## II.    Discussion

Wynn challenges the district court's denial of his request for a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2 and argues that his 92-month sentence is substantively unreasonable because it

15

fails to differentiate him from his co-defendants, who arguably engaged in more serious conduct. For the reasons set forth below, we are unpersuaded.

### A. Mitigating Role Adjustment

Wynn argues that the district court erred in denying him a minor role adjustment pursuant to U.S.S.G. § 3B1.2 because he had a "limited role in the 110 Gang's criminal enterprise." Appellant's Br. at 4. Section 3B1.2 of the Guidelines provides that a defendant's offense level should be decreased as follows:

> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

> In cases falling between (a) and (b), decrease by 3 levels. U.S.S.G. § 3B1.2.[3]

---

[3] Wynn's request for a mitigating role enhancement has varied over time. At his original sentencing, he sought a two- or three-level reduction on the ground that his role was either minor, or between minor and minimal. On remand, he argued for either a three- or four-level reduction on the theory that his role was either minimal, or at most between minor and minimal. In his brief to this Court, Wynn consistently discusses a minor role reduction, without quantifying the

Because a mitigating role adjustment under § 3B1.2 has the effect of reducing the defendant's otherwise-applicable Guidelines range, it is the defendant who bears the burden of establishing his entitlement to that reduction by a preponderance of the evidence. *See United States v. Carpenter*, 252 F.3d 230, 234 (2d Cir. 2001) (citing *United States v. Castaño*, 234 F.3d 111, 113 (2d Cir. 2000)).

"Whether a defendant qualifies as a minor participant is a "'highly fact-specific' inquiry," and so "we will disturb the district court's assessment only for clear error." *United States v. Esteras*, 102 F.4th 98, 107 (2d Cir. 2024) (quoting *United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993)).[4] The district court's determination "depends

---

requested adjustment. We need not determine whether Wynn is now asking only for a two-level reduction under § 3B1.2(a), or whether his argument is simply shorthand for any adjustment under § 3B1.2. Whatever the case, we conclude that the district court properly held that no mitigating role adjustment was appropriate.

[4] In the past, we have noted that our precedents do not uniformly describe the standard of review that applies to a district court's "ultimate decision" about whether to apply a mitigating role reduction. *See United States v. Labbe*, 588 F.3d 139, 145 n.2 (2d Cir. 2009) (citing cases where we have variously described the

upon the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *Shonubi*, 998 F.2d at 90 (internal quotation marks omitted). The commentary to the Guidelines explains that the application of the mitigating role adjustment is "based on the totality of the circumstances":

> In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:

issue as a "fact-sensitive question" reviewed for "abuse of discretion," *United States v. Salameh*, 261 F.3d 271, 280 (2d Cir. 2001); as a "finding" reviewed for "clear error," *Castaño*, 234 F.3d at 113; or as a "legal conclusion as to whether the circumstances constitute 'minimal' or 'minor' participation" that we review "*de novo*," *United States v. Gaston*, 68 F.3d 1466, 1468 (2d Cir. 1995)). And we have elsewhere indicated that we review "mixed questions of law and fact either *de novo* or under the clearly erroneous standard depending on whether the question is predominantly legal or factual." *Labbe*, 588 F.3d 145 n.2 (quoting *United States v. Selioutsky*, 409 F.3d 114, 119 (2d Cir. 2005). Because we view Wynn's challenges as going principally to the district court's underlying factual findings regarding the Guidelines' mitigating role adjustment factors, we regard the deferential "clear error" standard as most appropriate here. *See United States v. Gotti*, 459 F.3d 296, 349 (2d Cir. 2006) (applying the clear error standard of review "because the district court's application of U.S.S.G. § 3B1.1 to the facts of this case presents an issue that is predominantly factual rather than legal"). But even reviewed *de novo*, we would discern no error in the district court's determination.

18

(i)     the degree to which the defendant understood the scope and structure of the criminal activity;

(ii)    the degree to which the defendant participated in planning or organizing the criminal activity;

(iii)   the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv)    the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v)     the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt. n.3(C).  Thus, as this Court has previously noted, when a defendant is sentenced for a racketeering conviction, "his role adjustment is to be made on the basis of [his] role in the overall RICO enterprise."  *Wynn*, 37 F.4th at 68 (alteration in original) (quoting *United States v. Ivezaj*, 568 F.3d 88, 99 (2d Cir. 2009)).

At the outset, Wynn argues that the district court on remand failed to adhere to this Court's mandate when it conducted a *de novo*

19

evaluation of the relevant factors and determined that these factors did not weigh in favor of a downward adjustment. According to Wynn, our prior decision definitively held that these factors weighed in favor of a mitigating role reduction, and the district court on remand was limited to assessing how much weight to give them. We disagree.

The mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001) (emphasis and internal quotation marks omitted). In Wynn's previous appeal, this Court did not conclusively determine that any factors weighed in favor of a role adjustment. Rather, our decision held only that "the district [court's] cursory denial d[id] not sufficiently substantiate [its] decision," and remanded for the district court to "explain enough about the sentence for a reviewing court both to understand it and to assure itself that the [district court] considered the principles enunciated in federal

statutes and the Guidelines." *Wynn*, 37 F.4th at 68 (internal quotation marks omitted). In so concluding, we indicated that Wynn had "presented a strong *argument* for a mitigating role adjustment" and that "the record *suggests* that other, seemingly unconsidered, mitigating role factors favor Wynn." *Id.* (emphasis added). But our "suggest[ion]" was just that, and we commented only on the strength of Wynn's argument, without adopting it. Understandably, we chose to hear first from the district court, to whose factual findings we owe deference, before definitively assessing whether the defendant satisfied his burden of proof with respect to the downward adjustment. Accordingly, our mandate allowed—indeed, compelled—the district court at resentencing to make and explain its own independent findings about whether the relevant factors supported granting Wynn a mitigating role adjustment. The district court fully complied with that mandate.

We also conclude that the district court did not clearly err by finding that Wynn failed to meet his burden of establishing that his role in the RICO conspiracy was minor or minimal because he was not substantially less culpable than the average participant in the 110 Gang. We address each of the factors set forth in U.S.S.G. § 3B1.2, cmt. n.3(C).

First, in assessing Wynn's understanding of the scope and structure of the 110 Gang, Wynn points out that he admitted making only five small street-level drug sales and that he was incarcerated for a substantial portion of the charged conspiracy. He further contends that the "structure [of] the 110 Gang . . . was outside his knowledge base," and that he was "more akin to an independent contractor." Appellant's Br. at 13. But "[a] sentencing court is not bound to accept [a] defendant's self-serving characterizations of his role in an offense." *Shonubi*, 998 F.2d at 90. In his plea agreement, Wynn admitted that he was a member of the 110 Gang for a lengthy period—

22

from "at least 2012 to October 2018"—and that the "110 Gang members have established, in effect, an exclusive territory within which only they can distribute cocaine base . . . , heroin, and occasionally, other drugs." Government App'x at 4–5. Wynn also admitted that "[b]y virtue of his membership in the 110 Gang, [he] was able to possess and distribute the crack cocaine at various locations in and around the 110 Gang territory." *Id.* at 6. Further, the district court adopted the factual findings of the PSR, which included the fact that Wynn had been directly involved in two gang-related shootings when he was 18 years old.[5] And even though these two

---

[5] In our previous opinion, we noted that the government argued that Wynn was "one of the most senior members" of the 110 Gang, but that its claim had not been previously raised before the district court and did not seem to have any basis in the record. *Wynn*, 37 F.4th at 69 n.1. On remand, the government directed the district court's attention to portions of the PSR that describe in detail two shootings by Wynn in 1995, when he was 18 years old. In the first episode, while in the 110 Gang's territory, he shot at a target but instead hit a bystander, who was taken to the hospital. Less than three months later, while with Deshawnte Waller (a fellow 110 Gang member, who is a co-defendant in the present racketeering conspiracy case), Wynn took part in a gunfight outside a Syracuse high school. For these events, Wynn was convicted of second-degree assault and third-degree criminal possession of a loaded firearm, both felonies under New York law. Given the location of the first shooting within 110 Gang territory, and Wynn's actions in

23

shootings predate the period charged in the indictment, they still illustrate how long Wynn has been an active member of the 110 Gang, and therefore how extensive his knowledge of the gang's criminal activities was. Thus, despite Wynn's period of incarceration during much of the charged conspiracy, the district court did not clearly err in concluding that Wynn was "one of the longer serving members of the 110 gang who, by his own admissions, understood very well the gang's illegal conduct, including the drug dealing and acts of violence," App'x at 78.

In determining the extent to which Wynn participated in organizing the criminal activity and exercising decision-making authority, which are the second and third factors outlined in the Guidelines commentary, the district court also did not clearly err in determining that the record does not support the downward role

concert with a convicted 110 Gang member in the second shooting, the district court had an ample factual basis for its finding that Wynn was a longstanding member of the gang.

24

adjustment. Wynn is correct that there is no evidence that, outside of his own drug dealing, he organized any criminal activity or held decision-making authority over the racketeering enterprise. As the district court crucially observed after our remand, however, this was not atypical for a member of this particular gang. The 110 Gang did not have a traditional, hierarchical power structure, and "the acts committed in furtherance of the gang had little or no coordination or planning." *Id*. at 78-79. The degree to which Wynn participated in the planning of the criminal activity is therefore not indicative of his relative role in this criminal enterprise, which is the critical question for a mitigating role reduction. *See Alston*, 899 F.3d at 150 ("[T]he applicability of a 'minor role' reduction depends on the nature of the defendant's role in comparison to that of his co-participants in his criminal activity."). Wynn fails to direct our attention to anything in the record demonstrating by a preponderance of the evidence that, contrary to the district court's finding, the activities of the 110 Gang

25

were generally undertaken pursuant to coordinated planning or hierarchical decision-making. Absent such evidence, on a point where the defendant bears the burden of proof, we cannot say that the district court erred. Additionally, Wynn participated in a number of controlled drug purchases in which he sold drugs directly to a cooperating source, indicating that he had personal authority to set up the terms and arrangements of these deals.

The fourth factor identified in the Guidelines commentary—the nature and extent of the defendant's participation in the commission of the criminal activity—also does not support the mitigating role adjustment. The record suggests that Wynn's role in the criminal enterprise was typical of many of the charged defendants. Several of Wynn's co-conspirators did not participate in the charged acts of violence and were involved in the acts of the conspiracy only with respect to drug dealing and/or use of counterfeit credit cards. Like those co-conspirators, although Wynn was not a perpetrator of the

charged acts of violence that were committed by the 110 Gang, he was meaningfully involved in its drug-trafficking activity. As noted earlier, in his plea agreement he acknowledged participating in five drug transactions, and at least some of the crack cocaine in those sales was supplied by other 110 Gang members. The district court concluded that Wynn's "frequent and regular drug trafficking . . . went well beyond the five street level deals identified in the defendant's plea agreement." App'x at 79. This finding was not clearly erroneous. The PSR identified eight additional controlled purchases from Wynn from September 2017 to February 2018 involving 25.7 grams of crack cocaine and a quantity of heroin.[6] And

---

[6] Wynn now disputes his participation in these controlled buys but, at his original sentencing, he did not object to the factual statements concerning these drug transactions in the PSR. Wynn also did not object to these facts in his first appeal. The district court, in turn, adopted the factual findings in the PSR. "If a defendant failed to raise a claimed sentencing error below, . . . we review for plain error." *United States v. Hunt*, 82 F.4th 129, 142 (2d Cir. 2023). To establish plain error, an appellant must show that "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Chaires*, 88

27

it is entirely sensible for a sentencing court to infer that a defendant

with a proven track record of selling drugs over a period of time to a

cooperating source has been making additional sales to other

customers. Moreover, although Wynn spent much of the period of

the charged conspiracy in prison, he began posting photos of himself

on social media with other 110 Gang members within months of his

release, and began selling drugs again shortly after his release. The

district court thus did not clearly err in finding that "Wynn did not

intentionally disassociate with the gang; rather, his imprisonment

temporarily halted his gang-related activities," App'x at 79. Indeed,

his ability to quickly resume drug dealing in a territory closely

controlled by the 110 Gang reinforces the district court's conclusion

---

F.4th 172, 177 (2d Cir. 2023) (quoting *United States v. Miller*, 954 F.3d 551, 557–58 (2d Cir. 2020)). We find no such error in this case. Wynn also points out that the eight additional controlled purchases occurred outside 110 Gang territory. This, however, does not necessarily indicate that the controlled purchases fell outside the scope of the charged conspiracy. Wynn admitted that "[b]y virtue of his membership in the 110 Gang, [he] was able to possess and distribute the crack cocaine at various locations in *and around* the 110 Gang territory." Government App'x at 6 (emphasis added).

that his ties to that organization and its criminal activities remained strong.

In addressing the final factor—the degree to which the defendant benefited from the criminal enterprise—Wynn argues that he received only a minor financial benefit of $2,500 from his participation in the 110 Gang's drug sales. But Wynn admitted that he was able to sell drugs in the 110 Gang's territory due to his membership in the enterprise, because the group's violent acts helped establish exclusive territory, "within which only [110 Gang members] can distribute [drugs]." Government App'x at 4. In addition, as the government points out, the record indicates that Wynn was likely financially supporting himself primarily through his drug trafficking activity because his only employment history was when he worked for $9 per hour at a dollar store from September 2016 to February 2017, and he reported no assets or other sources of income. We therefore find the district court did not commit clear error in

determining that Wynn benefited significantly from the 110 Gang's overall success.

In sum, the district court did not clearly err by concluding (1) that Wynn did not bear his burden of establishing, by a preponderance of the evidence, that he played a minor or minimal role in the 110 Gang's criminal enterprise, *see* App'x at 78–80, and (2) that he was not substantially less culpable than other participants in the 110 Gang.

### B. Substantive Reasonableness

Wynn also argues that his 92-month sentence is substantively unreasonable for the same reasons that he articulated in arguing that a downward adjustment is appropriate, and because his sentence fails to distinguish him from his co-defendants, who he contends participated in more serious conduct. "[W]hen conducting substantive review, we take into account the totality of the circumstances, giving due deference to the sentencing judge's exercise of discretion, and bearing in mind the institutional

advantages of district courts."  *United States v. Cavera*, 550 F.3d 180,

190 (2d Cir. 2008) (en banc) (citing *Rita v. United States*, 551 U.S. 338,

354–55 (2007)).  As a result,

> [w]e will vacate a sentence as substantively unreasonable "only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions, that is, when sentences are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice."

*United States v. Ortiz*, 100 F.4th 112, 122 (2d Cir. 2024) (quoting *United

States v. Aldeen*, 792 F.3d 247, 255 (2d Cir. 2015)).  We see no reason to

vacate the district court's sentence here.

At the outset, this Court has made clear that "[t]he law does not

require a district court to 'consider or explain sentencing disparities

among codefendants.'" *United States v. Barrett*, 102 F.4th 60, 97 (2d Cir.

2024) (quoting *United States v. Alcius*, 952 F.3d 83, 89 (2d Cir. 2020)).

In any event, Wynn's 92-month sentence was at the bottom of the

applicable Guidelines range, and his sentence was not an outlier

among those of his co-conspirators, many of whom received longer

sentences.[7] Wynn also overlooks the fact that in addition to being a participant in a dangerous criminal enterprise, he committed numerous serious disciplinary infractions while in prison (including some involving violent and sexual conduct) and repeatedly violated the terms of his parole. Additionally, throughout his adulthood, and despite lengthy incarceration, Wynn has shown himself unwilling to disassociate from the violent 110 Gang. Therefore, based on the record before us, we cannot say that the district court imposed a substantively unreasonable sentence.

## III. Conclusion

In sum, we hold as follows:

1. The district court did not clearly err in declining to apply a mitigating role adjustment under U.S.S.G. § 3B1.2 because

---

[7] Anthony Hopper received a sentence of 385 months; Jamar Long received a sentence of 210 months; and Kinsey received a sentence of 136 months. *See United States v. Dowdell, et al.*, NDNY Case No. 18-cr-353, Dkt. Nos. 420, 455.

Wynn failed to establish that he was substantially less culpable than his co-conspirators.

2. Wynn's 92-month sentence of incarceration, the bottom of his advisory Guidelines range, is not substantively unreasonable based on his criminal conduct and history.

Accordingly, we AFFIRM the judgment of the district court.