*United States v. Davis*; *Goudelock*; *Hunter*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand twenty-five.

Present:
> SUSAN L. CARNEY,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee,*

v.

SHAMAR DAVIS, ADRIAN GOUDELOCK, JAI HUNTER,

> *Defendants-Appellants.*\*

22-1172 (L);
23-6348(Con); 23-6505 (Con)

---

FOR APPELLEE:

MONICA J. RICHARDS, Assistant United States Attorney, of Counsel, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, N.Y.

FOR DEFENDANTS-APPELLANTS:

JILLIAN S. HARRINGTON, Law Office of Jillian S. Harrington, Monroe Township, N.J., *for* Shamar Davis.

---

\* The Clerk of Court is respectfully directed to amend the caption accordingly.

LUCAS ANDERSON, Rothman, Schneider, Soloway & Stern, LLP, New York, N.Y., *for* Adrian Goudelock.

BENJAMIN GRUENSTEIN, Cravath, Swaine & Moore LLP, New York, N.Y., *for* Jai Hunter.

Appeal from judgments of the United States District Court for the Western District of New York (Sinatra, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED**.

Defendants-Appellants Shamar Davis, Adrian Goudelock, and Jai Hunter were convicted and sentenced for participating in a drug trafficking conspiracy. They now raise five challenges on appeal: (1) the district court improperly struck two prospective jurors for cause; (2) the government struck a prospective juror on the basis of race; (3) insufficient evidence supported Goudelock's conviction for conspiracy to launder money and Davis's convictions for conspiracy to possess cocaine with intent to distribute and attempted possession of cocaine with intent to distribute; (4) the district court erroneously admitted expert testimony; and (5) the district court misapplied the Sentencing Guidelines as to each Defendant. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. For-Cause Strikes

During jury selection, the government moved to strike for cause two jurors who expressed support for decriminalizing drugs. The district court granted the for-cause strikes, explaining that the jurors' statements "regarding whether drugs . . . should be decriminalized" created "concerns about the[ir] believability." Goudelock Br. at 12. But Goudelock and Hunter say this was not

2

a proper basis for exclusion, because the jurors did not demonstrate "actual bias, implied bias, or inferable bias." *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002). As such, Goudelock and Hunter claim they are entitled to a new trial.

We reject Goudelock's and Hunter's argument, because even if the district court should not have granted the for-cause strikes, there was no prejudice. *See Lockhart v. McCree*, 476 U.S. 162, 178 (1986) (rejecting notion that "by excluding prospective jurors with a particular viewpoint, an impermissibly partial jury results"); *United States v. Quinones*, 511 F.3d 289, 306 (2d Cir. 2007) ("Where the death penalty is not at issue, a defendant seeking reversal of his conviction based on alleged defects in jury selection must demonstrate more than error; he must establish the actual partiality of the jury that convicted him."). Thus, "we need not decide whether the district court abused its discretion." *United States v. Perez*, 387 F.3d 201, 207 (2d Cir. 2004).

## II.    *Batson* Challenge

Goudelock and Hunter argue that the government "purposefully excluded" a Black juror from the jury pool with a peremptory strike. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986). As evidence, Goudelock and Hunter point out that the government's justification for the strike was the juror's "studies in sociology," even though the juror never studied sociology—she was a *geology* major. Goudelock Br. at 12-13. Goudelock and Hunter say this mistake, among other aspects of the voir dire, reveals that the government's true motive was racial discrimination.

On review, we find no clear error in the district court's dismissal of Goudelock's and Hunter's *Batson* challenge. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) ("[A] trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."). The Supreme Court has recognized that "the back and forth of a *Batson* hearing can be hurried,

3

and prosecutors can make mistakes when providing explanations," but "mistaken explanations should not be confused with racial discrimination." *Flowers v. Mississippi*, 588 U.S. 284, 314 (2019). Here, a seemingly inadvertent mistake about a juror's course of study is insufficient, without more, to raise concerns about whether the government's strike was based on racial discrimination. Nor does any other part of the government's race-neutral justification for its strike raise concerns of purposeful discrimination. *See Batson*, 476 U.S. at 99 n.22 ("We have no reason to believe that prosecutors will not fulfill their duty to exercise their challenges only for legitimate purposes.").

## III. Sufficiency of the Evidence

A conviction is based on sufficient evidence if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). So we "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. Chavez*, 549 F.3d 119, 124 (2d Cir. 2008) (cleaned up).

Davis argues that the evidence was insufficient to support his convictions for conspiracy to possess cocaine with intent to distribute and attempted possession of cocaine with intent to distribute. We disagree. Davis's coconspirators testified that Davis sold their cocaine and gave them the cash from his sales. This "show[s] that the parties had a tacit understanding" to distribute drugs together. *United States v. Anderson*, 747 F.3d 51, 61 (2d Cir. 2014) (quotation marks omitted). And "when large quantities of [cocaine] are being distributed, each [participant] must be presumed to know that he is part of a wide-ranging venture, the success of which depends

4

on the performances of others whose identities he may not even know." *United States v. Ortega-Alvarez*, 506 F.2d 455, 457 (2d Cir. 1974).

We also find that sufficient evidence supported Goudelock's conviction for conspiracy to launder money. One of Goudelock's coconspirators testified that Goudelock and another coconspirator were "planning on opening up a couple of businesses" to launder money, Goudelock Br. at 16, and that Goudelock and the other coconspirator discussed using a business to "clean[] money . . . so it comes out as clean paper," Gov't Br. at 75. Although there was no further proof about the specifics of Goudelock's scheme, "it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Pitre*, 960 F.2d 1112, 1121 (2d Cir. 1992) (quotation marks omitted). And even if Goudelock did not take steps to put his money-laundering plan into action, the government "need not prove an overt act to obtain a conviction." *Whitfield v. United States*, 543 U.S. 209, 214 (2005).

## IV. Expert Testimony

The government's expert witness testified about how cocaine is typically transported and sold, as well as the methods drug traffickers use to evade law enforcement. Defendants argue that this testimony improperly usurped the province of the jury by telling jurors how to think about the other evidence they had heard.

"We review a district court's rulings on the admissibility of trial evidence for abuse of discretion." *United States v. Fazio*, 770 F.3d 160, 165 (2d Cir. 2014). And we find no abuse of discretion in the district court's decision to admit this expert testimony. "[W]e have repeatedly upheld the use of expert testimony by government agents to describe the characteristics and operating methods of narcotics dealers." *United States v. Boissoneault*, 926 F.2d 230, 232 (2d

5

Cir. 1991). Such testimony does not usurp the province of the jury—it provides valuable information that is "beyond the ken of the jury." *United States v. Cruz*, 981 F.2d 659, 664 (2d Cir. 1992).

## V. Sentencing Challenges

### A. Organizer or Leader Enhancement

The district court enhanced Goudelock's sentence for his role as "an organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). Goudelock argues this was procedural error. "We review the district court's conclusion that a defendant met the criteria for a leadership enhancement under U.S.S.G. § 3B1.1(a) *de novo*, but review the court's findings of fact supporting its conclusion for clear error." *United States v. Cuomo*, 125 F.4th 354, 369 (2d Cir. 2025) (cleaned up).

We find no error in the district court's application of the organizer or leader enhancement. As the district court explained, the "nature and scope of [Goudelock's] involvement was significant and long term." Gov't App'x at 380. Goudelock repeatedly "coordinate[d] shipment[s] of cocaine" and "directed" coconspirators accordingly. *Id*. at 379. Even if another coconspirator was "the *top* leader of the operation," that "does not preclude the application of § 3B1.1" to Goudelock. *United States v. Williams*, 23 F.3d 629, 635 (2d Cir. 1994) (emphasis added).

### B. Mitigating Role Adjustment

Hunter argues that the district court should have applied a mitigating role adjustment to his sentence. *See* U.S.S.G. § 3B1.2. This challenge goes "principally to the district court's underlying factual findings regarding the Guidelines' mitigating role adjustment factors, [so] we

6

regard the deferential 'clear error' standard as most appropriate here." *United States v. Wynn*, 108 F.4th 73, 81 n.4 (2d Cir. 2024); *see also United States v. Shonubi*, 998 F.2d 84, 90 (2d Cir. 1993) ("A sentencing court's assessment of the defendant's role in criminal activity is highly fact-specific.").

The district court's refusal to grant a mitigating role adjustment was not clearly erroneous. Hunter rented an apartment on behalf of his coconspirators, transported drugs, and acted as Goudelock's driver. As the district court explained, Hunter was "responsible for important tasks" and played "an integral role" in the conspiracy. Hunter App'x at 1593–94. He was thus not "substantially less culpable" than the average drug trafficker. U.S.S.G. § 3B1.2 cmt. 3(A).

C.    Stash-House Enhancement

Goudelock and Davis both challenge their sentencing enhancements for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). Goudelock and Davis concede that their *coconspirators* used such an apartment, but they argue that they did not "maintain" the stash house apartment themselves.

Upon review of the record, we conclude that the district court properly applied the stash-house enhancement to both Goudelock and Davis. Among other things, Goudelock and Davis frequently accessed the apartment to pick up cocaine for sale and used the apartment as a staging ground for cocaine distribution. Viewed in its totality, the evidence showed that Goudelock and Davis helped operate the stash house together with their coconspirators.

\*    \*    \*

7

We have considered Defendants' remaining arguments and find them to be without merit.

For the foregoing reasons, the judgments of the district court are **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court